Badawi Kamel WAFAI, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 85SC479.

Supreme Court of Colorado,
En banc.

Jan. 25, 1988.

David F. Vela, Colorado State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for respondent.

LOHR, Justice.

The defendant, Badawi Kamel Wafai, was convicted of two counts of first degree murder and was sentenced to consecutive terms of life imprisonment following a trial to a jury. The defendant appealed, and the Colorado Court of Appeals affirmed the judgment of conviction. *People v. Wafai*, 713 P.2d 1354 (Colo.App.1985). We granted certiorari to determine whether the trial court erred in ordering a change of venue on .its own motion, over the defendant's objection, in order to assure the defendant a trial by an impartial jury. In affirming the trial court's action, the court of appeals stated that Crim.P. 21(a)(1) allows a change of venue on the court's own motion, and that such a change is not prohibited by the

Colorado Constitution, Article II, Section 16. Although we do not agree that Crim.P. 21(a)(1) authorizes a trial court to change venue in the absence of a motion for a change of venue, we hold that a trial court has the inherent power to order a change of venue at its own instance when necessary to assure the defendant a trial by an impartial jury, and that such a venue change does not violate the defendant's rights under Article II, Section 16, of the Colorado Constitution. We also conclude that the trial court in this case properly exercised its discretion to change venue, and we therefore affirm the judgment of the court of appeals.

## I.

Badawi Kamel Wafai was charged with two counts of first degree murder after deliberation, based upon the shooting and killing of his brother and sister-in-law. The shooting occurred in Douglas County, and the information was filed in the Douglas County District Court.

The trial commenced with jury selection on March 15, 1983, in Douglas County. Voir dire continued for six and one-half days spread over a period of nearly two weeks. Five Douglas County jury panels consisting of over 330 potential jurors were examined by the court and counsel. On the morning of March 25, 1983, one of the prospective jurors informed the court that he had overheard three other jurors joking about "giving the guy a fair trial and then hanging the bastard." The defense moved to quash the entire group of prospective jurors who had appeared, arguing that since several of the jurors had ignored their oath to tell the truth [1] and had violated the court's order against talking about the case, the entire group was tainted.

The court questioned the three prospective jurors who had participated in the conversation in which the comments were made to obtain further information about the conversation and to determine the extent of the influence of this incident on the others. The persons questioned admitted joking about getting the case over with and hanging the defendant. They stated that other jurors had made similar remarks. The court then granted the motion to quash the entire group and dismissed the prospective jurors. Under the administrative procedures available for summoning jurors, another jury panel could not be provided in Douglas County for two weeks.

The case was continued to March 28, 1983, at which time the trial court, on its own motion and over the objection of defense counsel, concluded that a fair and expeditious trial could not be held in Douglas County. The court made the following findings:

The Court finds that at the time of granting the motion to quash the jury panel on March the 25th, 1983, this Court had exhausted five full jury panels and over 330 individual jurors from those panels, and that this took place over a period of two weeks.

Last Friday, March 25th, 1983, the Judicial Department informed the Court that another jury panel could not be provided for two weeks. The record should reflect that this would take our jury selection process into the month of April, 1983. The trial docket of this Court had previously been vacated to provide a March, 1983 setting for the trial of this case. The Courts' dockets in Elbert and Lincoln County for the month of March, 1983, had likewise been vacated and reset for the month of April, 1983, compounding the April dockets in those Courts.

In this District, Division 9, which is the number given to the Court who sits in Douglas, Elbert and Lincoln Counties is thus divided in its time schedule, and since there is only one District Judge available in Douglas County, and that on a part-time basis, the Court finds that there is no possibility of continuing this trial for two more weeks for the availability of another jury panel since the

1. Defense counsel argued that the jurors' statements about giving the defendant a fair trial and then hanging him reflected that their earlier statements on voir dire that they could give the defendant a fair trial and that they had no prejudices or biases were untrue.

now compounded dockets in all three counties cannot be once again vacated, and there is not available to the Court in this District the accommodation of visiting judges as has been the previous practice in this District since the Chief Justice Directive Number 83–2, Subsection 5, which was the result of the budgetary crisis in our state court system.

Furthermore, based upon the record previously made in this case of the selection of the jury, together with the publicity given to the jury selection process in this last two weeks, there is no likelihood that proceeding with another jury panel in this case would achieve any better results than we have had.

Accordingly, the Court finds that a fair and expeditious trial cannot be provided for Mr. Wafai in Douglas County, and the Court orders a change of the place of the trial pursuant to Rule 21(a)(1).

The trial court ordered that the jurors be selected from a jury panel available the next day in Arapahoe County, also part of the Eighteenth Judicial District. The jury selected would then be transported to Douglas County, where the case would be tried.[2] The court allowed counsel the opportunity to register objections to its order.

Defense counsel objected to the change of venue. They argued that Article II, Section 16, of the Colorado Constitution guaranteed the defendant's right to have jury selection and all other trial proceedings conducted in Douglas County. Defense counsel contended that the applicable rules do not give a court the power to change venue on its own motion, since the right to a jury from the area in which the crime took place can be waived only by the defendant. Defense counsel also asserted that it was still possible to empanel a fair jury in Douglas County. The trial court then made additional findings as follows:

[T]he Court's docket reflects that there would be no opportunity to reset Mr. Wafai's case within the period secured by the Constitution and statutes and rules. The record will reflect that Mr. Wafai had waived his right to a speedy public trial in January, 1983, and that there is no possibility of resetting the case before July of 1983 in this Court.

The proceedings resumed in district court in Arapahoe County on March 29, 1983, and a jury was selected. The jury was sequestered for the remainder of the trial, which commenced on April 6, 1983, and was conducted in Douglas County. Wafai was found guilty of both counts of first degree murder, and a judgment of conviction was entered.

Wafai appealed the judgment, and the court of appeals affirmed the convictions. The court held that Crim.P. 21(a)(1) expressly permits a trial court, in its sound discretion, to order a change of venue on its own motion. *People v. Wafai*, 713 P.2d at 1355–56. The court also determined that the term "district" in the provision of Article II, Section 16, of the Colorado Constitution that guarantees a defendant a trial by an impartial jury of "the county or district in which the offense is alleged to have been committed" is synonymous with "judicial district." *Id.* at 1356. The court of appeals held, therefore, that the trial court did not violate the defendant's rights under Article II, Section 16, by selecting the jury from another county within the judicial district. *Id.* Finally, the court concluded that under the circumstances of this case, "the trial court's chosen means of preserving the defendant's right to a fair trial" should be upheld. *Id.* The defendant petitioned this court for a writ of certiorari, and we granted that petition.

---

**2.** For brevity, we refer to this procedure as a change of venue even though the evidence was presented and the verdict reached in the county where the charges were originally filed. No party contends that it was improper to try the case in Douglas County if it was legally permissible to select the jury in Arapahoe County from an Arapahoe County jury panel. Although we have previously suggested the possibility of us-

ing this procedure, *see People v. Botham*, 629 P.2d 589, 596 (Colo.1981), we caution that it should be employed only in extraordinary circumstances. Transporting jurors from the county of their residence to another part of the state has potential for undue hardship, and this would be especially true if the jury were not sequestered.

**40**

## II.

Wafai challenges his convictions on the basis that the trial court did not have the authority to order a change of venue on its own motion, over the defendant's objection. He argues that sections 16–6–101 to –104, 8A C.R.S. (1986), and Crim.P. 18(a)(1) and 21(a) allow such a change only upon the motion of a party. The defendant also contends that the change of venue violated the Colorado Constitution, Article II, Section 16, which states in relevant part that "[i]n criminal prosecutions the accused shall have the right to ... a speedy public trial by an *impartial jury of the county or district* in which the offense is alleged to have been committed." (Emphasis added.) Finally, Wafai asserts that in any event the trial court abused its discretion in ordering a change of venue under the facts of this case and that it also erred in issuing the order without first holding a hearing. We address these arguments in the order stated.

## A.

█ Section 18–1–202(1), 8B C.R.S. (1986), establishes where venue is initially appropriate. That statute states that "[e]xcept as otherwise provided by law, criminal actions shall be tried in the *county* where the offense was committed, or in any other county where an act in furtherance of the offense occurred." (Emphasis added.) *See also* Crim.P. 18.

Sections 16–6–101 through 16–6–104 govern change of venue. Section 16–6–101 outlines the grounds for a change of venue,[3] and section 16–6–102 provides that a motion for change must be accompanied by one or more affidavits setting forth the facts upon which the defendant relies, or by a stipulation of the parties. Section 16–6–103 provides for a change of venue to another county within the judicial district in certain limited circumstances not applica-

ble here. *See also* Crim.P. 18(b). These sections do not expressly authorize a court to change venue on its own motion, and section 16–6–104 states that except as otherwise provided by sections 16–6–101 to –103, change of venue proceedings are governed by the applicable rules of criminal procedure. We therefore look to those rules for further guidance.

Crim.P. 21(a)(1) provides that:

The place of trial may be changed when the court in its sound discretion determines that a fair or expeditious trial cannot take place in the county or district in which the trial is pending.

Procedural provisions for changing venue are also established by Crim.P. 21. The court of appeals noted that Crim.P. 21(a)(1) "expressly permits the trial court, in *its* sound discretion, to change venue," and construed this language to authorize a trial court to take such action on its own motion. *People v. Wafai,* 713 P.2d at 1356 (emphasis in original). The court concluded that "[a] different interpretation of Crim.P. 21(a)(1) would offend the defendant's right to a fair trial in a situation such as here where an impartial jury could not practicably be empanelled in the county of defendant's choice." *Id.*

The defendant argues, however, that the court of appeals' reading of the rule is incorrect and ignores the procedural requirements of Crim.P. 21(a)(2), which states that:

(I) A motion for a change of venue shall be in writing and accompanied by one or more affidavits setting forth the facts upon which the moving party relies, or in lieu of such affidavits the motion, with approval of the court, may contain a stipulation of the parties to a change of venue.

(II) The written motion and the affidavits shall be served upon the opposing party five days before the hearing; the

---

3. Section 16–6–101 provides:
(1) The place of trial may be changed:
(a) When a fair trial cannot take place in the county or district in which the trial is pending; or

(b) When a more expeditious trial may be had by a change in the place of trial from one county to another; or
(c) When the parties stipulate to a change in the place of trial to another county in the same judicial district or to a county in an adjoining judicial district.

nonmoving party may submit a written brief or affidavit or both in opposition to the motion.

(III) As soon as practicable, the court may hold a hearing on the motion.

The defendant contends that the language of this rule plainly provides for a change of venue only upon the motion of a party aggrieved by improper or unfair venue, or in circumstances where the parties stipulate to the change and the court approves it.

We have stated that in order to assure the defendant a fair trial, "the procedural rules relating to applications for a change of venue should be liberally construed." *Sollitt v. District Court,* 180 Colo. 114, 118, 502 P.2d 1108, 1109–10 (1972) (testimony of nonresidents of county admissible as foundation for introduction of public opinion survey in support of defendant's motion for change of venue). Crim.P. 21(a)(2) sets forth the procedural criteria governing a motion for a change of venue, and subsection (a)(1) simply describes the grounds upon which the trial court may approve the motion and provides that the decision whether to grant the motion rests in the sound discretion of the trial court. However, the rule neither expressly authorizes nor explicitly prohibits a venue change on the court's own motion over the objection of the defendant, and we do not believe that authority for a court-initiated venue change can fairly be inferred from the language of the rule.

Since the applicable statutes and rules contain no affirmative authorization for a court to order a change of venue on its own motion, we must next consider whether a trial court has the inherent power to take such action. Although we have never before addressed this issue, the courts in several other states have, and their analyses provide us with insight and guidance.

In *State v. Alfonsi,* 33 Wis.2d 469, 147 N.W.2d 550 (1967), the defendant was convicted of bribery and argued on appeal that although he had not requested a change of venue, he was denied a fair trial because of the extent and nature of publicity both before and during the trial. The Wisconsin Supreme Court relied on *Sheppard v. Maxwell,* 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966), for the proposition that a trial court must take appropriate steps to protect the defendant's right to a fair trial. The court concluded that "[w]hen it appears that dispassionate evaluation of the evidence is rendered doubtful because of the pressure of publicity, the trial court must act *sua sponte.*" 147 N.W.2d at 557. *Accord State v. Dean,* 67 Wis.2d 513, 227 N.W.2d 712, 718–19 (1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976). However, the court determined that the publicity surrounding Alfonsi's trial had not been so pervasive and prejudicial as to deprive the defendant of a fair trial, and therefore the trial court did not err by not ordering a change of venue on its own motion.

In *State v. Valdez,* 83 N.M. 632, 495 P.2d 1079 (Ct.App.), *aff'd,* 83 N.M. 720, 497 P.2d 231, *cert. denied,* 409 U.S. 1077, 93 S.Ct. 694, 34 L.Ed.2d 666 (1972), the trial court ordered a change of venue based upon a motion by the state, and the defendant challenged that order on various grounds. The New Mexico Court of Appeals rejected this challenge, but also stressed that "[u]nder the facts of the incident out of which the charges against the defendant arose, ... the trial court's inherent power permitted it to order a change of venue on its own motion." 495 P.2d at 1082. The court noted that "[t]he right to trial by an impartial jury is a right extending to the public, represented by the state, as well as the criminally accused." *Id.* The court determined that at common law a trial court had possessed the inherent authority to order a change of venue on its own motion if an impartial trial otherwise could not be had, and that neither the adoption of the state constitution nor the enactment of a change of venue statute had limited this common law power. The New Mexico Supreme Court agreed with the reasoning of the court of appeals, but cautioned that trial courts must exercise this power only in exceptional cases. 497 P.2d at 233. *See also Patterson v. Faircloth,* 256 Ga. 489, 350 S.E.2d 243, 246 (1986) (acknowledging that in absence of controlling constitutional

or statutory provisions, some courts recognize inherent authority in the trial court to change venue over defense objection when fair trial cannot be obtained in county where crime occurred); *Heslop v. State*, 202 Md. 123, 95 A.2d 880, 881 (1953) (recognizing that in the United States it has been held that a court has the inherent power to change venue without reliance on constitutional or statutory authority when necessary to assure a fair trial); *Barry v. Truax*, 13 N.D. 131, 99 N.W. 769, 776 (1904) (at English common law the courts always had the inherent power to change venue to accord a fair and impartial trial).

The New Mexico courts relied heavily on *Crocker v. Justices of Superior Court*, 208 Mass. 162, 94 N.E. 369 (1911), to support their conclusion that trial courts had the inherent power to change venue at common law. The defendant in *Crocker* had moved for a change of venue, but the trial court denied the motion because the relevant statutes did not explicitly authorize a superior court judge to order a change of venue, and the trial court concluded it lacked the power. The case contains a lengthy discussion of a trial court's power at common law to order a change of venue. During the course of its discussion, the court stated:

In *Rex v. Cowle*, 2 Burr. 834, 859 (in 1759), Lord Mansfield said: "The law is clear and uniform as far back as it can be traced...." So in parts of England itself where an impartial trial cannot be had in the proper county it shall be tried in the next....

....

The weight of opinion in those of the older states, whose judicial history is most nearly like our own, supports the view that it is an inherent power of common law courts to order a change for the purpose of securing an impartial trial. 94 N.E. at 372–75. However, the decision in *Crocker* did not distinguish cases in which the defendant or the state had moved for a change of venue from those in which the court acted on its own motion, and the ultimate holding in the case relates only to situations in which the defendant has moved for a change of venue.[4]

We agree with the courts that have expressed the view that a trial court has the inherent power to change venue on its own motion if such action is necessary to provide a fair trial. We also conclude that this power can be exercised in appropriate circumstances even when the defendant objects. In reaching this conclusion, we rely on several factors. First, it appears that at common law a court had the power to order

---

4.  The view that at common law a trial court had the authority to change venue on its own motion has not received universal acceptance. *See, e.g., Patterson v. Faircloth*, 256 Ga. 489, 350 S.E.2d 243, 246 (1986) (recognizing a split of authority). In some states constitutional and statutory provisions have been found to deny this authority to a trial court. *See, e.g., State v. Ash*, 94 Idaho 542, 493 P.2d 701, 704 (1971); *In re Oberst*, 133 Kan. 364, 299 P. 959 (1931). In other states, however, statutes or rules have been held to authorize a change of venue at the instance of a trial court under certain circumstances. *See Jackson v. Superior Court*, 13 Cal. App.3d 440, 91 Cal.Rptr. 565 (1970); *Patterson v. Faircloth*, 256 Ga. 489, 350 S.E.2d 243 (1986); *Aranda v. State*, 736 S.W.2d 702 (Tex.Crim.App. 1972).

The circumstances giving a trial court the authority to change venue on its own motion vary under the statutes and rules recognizing such authority. *See Jackson v. Superior Court*, 13 Cal.App.3d 440, 91 Cal.Rptr. 565 (1970) (construing Cal.Penal Code § 1033 (West 1985), which allows the court to change venue on its own motion "when it appears as a result of the exhaustion of all of the jury panels called that it will be impossible to secure a jury...."); *Patterson v. Faircloth*, 256 Ga. 489, 350 S.E.2d 243 (1986) (construing what is presently Ga.Code Ann. § 17–7–150(b) (1982), which allows for a change of venue by the judge "whenever, in his judgment, there is danger of violence being committed on the defendant...."); *Aranda v. State*, 736 S.W.2d 702 (Tex.Crim.App.1987) (construing Tex.Crim.Proc.Code Ann. § 31.01 (Vernon 1986 Supp.), which provides for a change of venue on the court's own motion when the judge is "satisfied that a trial, alike fair and impartial to the accused and to the State, cannot, from any cause, be had in the county in which the case is pending....").

Resolution of issues surrounding the change of venue in criminal cases is typically dependent upon the interpretation of the constitutional and statutory provisions of a particular state; therefore, precedents from other states construing dissimilar provisions are of limited value in resolving such issues in Colorado.

a change of venue on its own motion if necessary to ensure the defendant a fair trial. *See Crocker v. Justices of Superior Court,* 94 N.E. at 372–75. Pursuant to section 2–4–211, 1B C.R.S. (1980), the common law of England, with certain limited exceptions, "so far as the same is applicable and of a general nature, ... shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." *See also Lovato v. District Court,* 198 Colo. 419, 425, 601 P.2d 1072, 1075 (1979); *Young v. Colorado Nat'l Bank,* 148 Colo. 104, 111, 365 P.2d 701, 706 (1961); *State v. Valdez,* 495 P.2d at 1084, 497 P.2d at 233 (recognizing that New Mexico has adopted the common law unless otherwise abrogated by specific statutory provisions and that the power of a trial court to change venue on its own motion if necessary to assure the defendant a fair trial is part of that common law). The relevant constitutional and statutory provisions, while not expressly authorizing a change of venue on a court's own motion, also do not specifically prohibit such a change; therefore, the common law rule has not been abrogated.

Second, a trial court has the duty to ensure that a defendant be given a fair trial by impartial jurors. In a number of cases dealing with pre-trial publicity and the problems it creates, the United States Supreme Court has emphasized this duty. As the Court stated in *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961), "[i]n essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." In *Sheppard v. Maxwell,* the Court stressed that due process requires a trial by an impartial jury, and stated that:

the trial courts must take strong measures to ensure that the balance is never weighed against the accused.... [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.

384 U.S. at 362–63, 86 S.Ct. at 1522. *See also Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).[5] The Court again considered possible ways "to try to assure the kind of impartial jury that the Fourteenth Amendment guarantees" in *Groppi v. Wisconsin,* 400 U.S. 505, 509, 91 S.Ct. 490, 492–93, 27 L.Ed.2d 571 (1971), a case concerning the constitutionality of a state law that prevented a change of venue for a jury trial in misdemeanor cases. The Court held that the statute was unconstitutional because it denied a defendant an opportunity to show that a change of venue was necessary to a fair trial in a particular case. The decision noted that in *Rideau v. Louisiana,* 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed. 2d 663 (1963), the Court had determined that in certain cases, a change of venue may be the only constitutionally sufficient means to assure an impartial jury.

We have also recognized the fundamental importance of an impartial jury under the Colorado Constitution. A trial by jury "interpos[es] between the accused and the accuser the common sense judgment of lay representatives of the community." *Aurora v. Rhodes,* 689 P.2d 603, 610 (Colo.1984). As this court stated in *Oaks v. People,* 150 Colo. 64, 68, 371 P.2d 443, 447 (1962), "[a]mong the rights guaranteed to the people of this state, none is more sacred than that of trial by jury." *See also Maes v. District Court,* 180 Colo. 169, 175, 503 P.2d 621, 624 (1972). In *Brisbin v. Schauer,* 176 Colo. 550, 492 P.2d 835 (1971) (over-

---

**5.** The court in *Nebraska Press Ass'n* described the options open to a trial court faced with pre-trial publicity:

    (a) change of trial venue to a place less exposed to the intense publicity that seems imminent in Lincoln County;

    (b) postponement of the trial to allow public attention to subside; (c) searching question-

ing of prospective jurors ... to screen out those with fixed opinions as to guilt or innocence; (d) the use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court. Sequestration of jurors is, of course, always available.

*Id.* at 563–64, 96 S.Ct. at 2805.

ruled on other grounds in *Marshall v. Kort,* 690 P.2d 219 (Colo.1984)), we relied on *Groppi v. Wisconsin* in stating that "if a community is prejudiced against a citizen or if other circumstances are likely to deny him a fair and impartial jury trial, then a change of venue must be granted." 176 Colo. at 552, 492 P.2d at 836.

Third, and relatedly, we have always stressed that the decision of whether to grant a change of venue rests in the sound discretion of the trial court, and we have refused to disturb the exercise of that discretion absent abuse. *People v. McCrary,* 190 Colo. 538, 544–45, 549 P.2d 1320, 1325–26 (1976); *People v. Simmons,* 183 Colo. 253, 255, 516 P.2d 117, 118–19 (1973). We have described the wide range of alternatives available to a trial court concerned about providing a fair trial in a particular case,[6] emphasizing that "[r]egardless of the means imposed by the trial judge to insure the accused's constitutional right to a fair trial by a panel of impartial jurors, the critical inquiry is whether the chosen means did in fact preserve the accused's right to a fair trial." *People v. Botham,* 629 P.2d 589, 596 (Colo.1981).

Although the cases in which change of venue issues have arisen, both in this court and in other jurisdictions, have usually involved motions by the defendant that have been denied by the court, we see no reason to confine the court's authority to circumstances in which there has been a motion for a change of venue. It is a court's essential function to assure a fair venue for trial, and we perceive no reason that a court should be disabled from performing that function simply because no party has sought to change the place of trial or because a party objects.

Given the inherent power of courts at common law to order a change of venue, the duty of a trial court to assure a fair and impartial trial, and the responsibility and discretion vested in trial courts in making change of venue decisions, we conclude that a trial court does have the power to order a change of venue on its own motion, even over the defendant's objection, when necessary to obtain an impartial jury. To hold otherwise might enable a defendant to achieve the dismissal of charges in cases creating a great deal of publicity, since if the defendant refused to waive venue, impartial jurors may be impossible to find before the speedy trial period runs. As the court in *Crocker* stated:

> If the matter is considered on principle and apart from authority, the same conclusion is reached.... A court of general jurisdiction ought not to be left powerless under the law to do within reason all that the conditions of society and human nature permit to provide an unprejudiced panel for a jury trial. Without such a power it might become impossible to do justice either to the general public or to the individual defendant.

94 N.E. at 376–77.

### B.

■ The foregoing analysis, however, does not take into account any constraints on the exercise of a court's inherent power to change venue that may have been introduced by the adoption of Article II, Section 16, of the Colorado Constitution. We next must determine whether the venue change in this case violated the defendant's right

---

6. In *People v. Botham,* 629 P.2d 589 (Colo.1981), the trial court denied the defendant's motion for a change of venue, and we reversed, concluding that the means chosen by the court were insufficient to protect the defendant's right to a fair trial and stating that:

> The trial judge may: (1) cause extensive voir dire examination of prospective jurors; (2) change the trial venue to a place less exposed to intense publicity; (3) postpone the trial to allow public attention to subside; (4) empanel veniremen from an area that has not been exposed to intense pretrial publicity; (5) enlarge the size of the jury panel and increase the number of peremptory challenges; or (6) use emphatic and clear instructions on the sworn duty of each juror to decide the issues only on the evidence presented in open court.

*Id.* at 596 (citations omitted). The trial court in the present case elected to empanel jurors from another county in order to provide the defendant a fair trial. In this case, Wafai is not complaining that the jury chosen from Arapahoe County was not impartial, or that the trial was unfair. The defendant has alleged no prejudice whatsoever resulting from the trial court's action.

to a trial "by an impartial jury of the county or district in which the offense is alleged to have been committed," as guaranteed by Article II, Section 16. The court of appeals concluded that there was no constitutional violation because "district" means "judicial district" and Arapahoe County, from which the jury was drawn, is in the same judicial district as Douglas County, where the crime was allegedly committed. The defendant, however, contends that "district" means the territory over which the court may exercise authority in criminal matters,[7] and argues that the legislature has confined this area to the county in which the offense was committed. Therefore, our first task in addressing the constitutional challenge is to ascertain the meaning of the word "district" as it is used in Article II, Section 16.

We cannot agree with the court of appeals that "district" means "judicial district." The Colorado Constitution, as originally adopted, divided the entire state into twenty-six counties and placed each of these counties within one of four judicial districts. *See Proceedings of the Constitutional Convention held in Denver, December 20, 1875* 680 (1907). The same document, in Article II, Section 16, created the right of an accused to be tried in the "county or district in which the offense is alleged to have been committed." *Id.* at 665. If a trial anywhere within the judicial district would satisfy the constitutional requirement, then there would be no right to a trial in the smaller territorial area, the county where the offense allegedly was committed. The interpretation adopted by the court of appeals therefore accords no meaning to the right to trial by a jury of the county where the offense took place. We cannot assume that words used in the constitution are meaningless or redundant.

*See, e.g., Thirteenth Street Corp. v. A-1 Plumbing and Heating Co., Inc.,* 640 P.2d 1130, 1138 (Colo.1982). Moreover, the term "judicial district" has a particular meaning within the context of Article VI of the Colorado Constitution as originally adopted, *see Proceedings of the Constitutional Convention held in Denver, December 20, 1875,* 680–81 (1907), and it must be assumed that if the drafters of the constitution had meant "judicial district" in the context of Article II, Section 16, that very term would have been employed.

The defendant argues that "district" simply refers to the area over which a court may exercise authority in criminal matters, and implicitly contends that the legislature has acted within its power in confining that area to "the county where the offense was committed." *See* § 18–1–202(1), 8B C.R.S. (1986). Therefore, under the present legislative scheme, "district" is coextensive with "county." Although we agree with the defendant's interpretation to a point, his reading of the constitutional provision is not complete. We believe that the term "district" was also intended to express a concept of local vicinity, creating a requirement that the jury be drawn from the area in which the offense is alleged to have been committed. A county is simply one constitutionally appropriate local vicinity. The legislature, therefore, is free to define the area within which a criminal trial may take place but must do so consistent with the constitutional requirement that the area be confined to the district, or vicinity, in which the offense allegedly occurred.

We find support for our construction in the history of jury trials. At common law, all crimes were required to be tried by a jury of the county or neighborhood in

---

**7.** The defendant relies on *In re Oberst,* 133 Kan. 364, 299 P. 959 (1931), in which the Kansas Supreme Court considered the meaning of a constitutional provision similar to our Article II, Section 16, and determined that the term "district" is "intended to designate the precise portion of territory or division of the state over which the court, at any particular sitting, may exercise power in criminal matters." *Id.* 299 P. at 962. The Kansas court pointed out that the term "district" was added to the constitutional

provision simply to provide a mechanism for trying persons who committed a crime outside an organized county, and that once the state was completely divided into counties, the phrase "or district" became mere surplusage. As the Colorado Court of Appeals points out in the present case, the unique historical situation existing in Kansas when its state constitution was enacted did not confront the drafters of the Colorado Constitution. 713 P.2d at 1356.

which they were committed. *See, e.g., Patterson v. Faircloth*, 350 S.E.2d at 246; *Crocker v. Justices of Superior Court*, 94 N.E. at 371–72. This requirement was designed to provide protection for the accused, and to "prevent the possibility of sending him for trial to a remote county, at a distance from friends, among strangers, and perhaps among parties animated by prejudices of a personal or partisan character." *State v. Albee*, 61 N.H. 423, 429 (1881). Article II, Section 16, of our state constitution incorporated a provision limiting the area in which a defendant could be tried. This court has noted that such a provision helps foster "the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Aurora v. Rhodes*, 689 P.2d at 610 (quoting *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970)).

Our construction gives meaning to both the word "county" and the word "district." As we read Article II, Section 16, the drafters meant to provide the defendant with a jury of the locality in which the crime was committed.[8] The phrase "county or district" was chosen to specify one locality that would be constitutionally permissible, i.e., a county, but to provide the legislature with the flexibility to redefine the area from which a jury could be drawn as the state population grew and demographics changed. The term "district" would allow the legislature to define the locality from which a jury could be drawn without being constrained by county boundaries.

This power to redefine the locality from which a jury can be drawn has not yet been exercised by the legislature as it applies to district and county court cases. Pursuant to section 18-1-202(1) and Crim.P. 18(a)(1), venue in criminal actions is limited to the county in which the crime was committed. Jury panels are selected from the particular county in which the trial is held. *See* §§ 13-71-105 to -110, 6A C.R.S. (1987). As applied to courts such as district and county courts having jurisdiction in areas made up of one or more entire counties, the county in which an offense is alleged to have been committed is the constitutionally permissible area from which a jury may be drawn.

---

8. The history of Article II, Section 16, as detailed in the *Proceedings of the Constitutional Convention held in Denver, December 20, 1875* (1907), lends support to our reading of this provision. The provision as originally proposed guaranteed the accused "a speedy public trial by an impartial jury of the *country*." *Id.* at 91. (Emphasis added.) At common law, it was believed that a criminal accused of felony could not be tried unless he consented to trial and "put himself upon the *country*." As J. Stephen described the procedure in *History of Criminal Law of England* 297–301 (1883), the prisoner was asked if he was guilty or not guilty:

> If he said "Not guilty," the answer was, "Culprit, how will you be tried?" to which the prisoner had to reply, "By God and my country."

> . . . .

> "[M]y country" always meant the inquest or jury. . . .

Initially this jury, or some of its members, was drawn from the immediate neighborhood in which the crime was committed, and later, the jury was obtained from the "body of the county at large." *See* B. Gavit, *Blackstone's Commentaries on the Law* 677 (1941). *See also* T. Plucknett, *A Concise History of the Common Law* 125 (1956). Thus, the term "country" signified a jury from the locality in which the crime was committed. In civil cases at common law, each party would also "put himself upon the country" or pray that the matter "may be inquired of by the country." The sheriff would then draw twelve men from the area, or "of the body of his county," to serve as jurors. *See* M. Ewell, *Blackstone's Commentaries* 579 (1915).

The drafters of our constitution originally included the ancient term "country" in Article II, Section 16. However, the drafters appear to have later decided upon more modern terminology with a similar meaning which was being used by other states in their constitutions. *See, e.g., In re Oberst*, 299 P. at 961 (discussing provision in Kansas Constitution guaranteeing the defendant an impartial jury of the county or district, and noting that this clause was taken from the Ohio Constitution); *In re Nelson*, 19 S.D. 214, 102 N.W. 885, 887 (S.D.1902) (construing a similar provision of the South Dakota Constitution and noting that the same clause is found in many state constitutions). On Wednesday, February 2, 1876, a motion was made to amend the section by striking out the word "country" and adding the words "county or district in which the offense is alleged to have been committed." *Proceedings of the Constitutional Convention held in Denver, December 20, 1875* at 208. The convention concurred in this amendment and the provision was later approved in this form.

The inclusion of the term "district" in Article II, Section 16, has current significance, however, with respect to courts that have territorial jurisdiction not defined along county lines, such as municipal courts. We recently considered the meaning of the term "district" in relation to such courts in *Aurora v. Rhodes*, 689 P.2d 603 (Colo.1984), which is supportive of our analysis in the present case. The district court for Arapahoe County had reversed a judgment of conviction for careless driving entered by the municipal court of the City of Aurora because the municipal court did not exclude prospective jurors who resided within the city limits but did not live in Arapahoe County, where the offense occurred. We addressed the issue of whether under Article II, Section 16, of the Colorado Constitution all the jurors must reside in the county where the offense was committed in a prosecution for a municipal ordinance violation, even though the territorial boundaries of the municipality included lands in more than one county. This court noted that the text of the constitution does not define the meaning of "district," and that case law has not supplied a definition. We then determined that the term "district":

> refers to a governmental area distinct from a county and that a county is not the exclusive geographical unit from which jurors may be drawn. We believe the term "district," as used in article II, section 16, and as applicable to a municipal court prosecution for an ordinance violation in a multi-county municipality, should be interpreted to mean the area served by the municipal court or, in other words, the territorial boundaries of the city.

*Id.* at 610. In adopting this construction, the decision stressed the "somewhat

unique characteristics of municipal court jurisdiction." *Id.*[9] Viewed in the framework of our analysis today, the creation of municipal courts with jurisdiction over territory in more than one county implicitly included the intention that juries be selected from the entire area within the municipal boundaries, i.e., that area was designated a "district" as that term is used in Article II, Section 16.

Under our interpretation of Article II, Section 16, therefore, the defendant is correct in his assertion that the "county or district in which the offense was alleged to have been committed" was limited to Douglas County. This conclusion, however, does not end our analysis. Although the trial court drew the jury from an area outside the applicable trial district, its actions did not necessarily violate the constitutional provision. Article II, Section 16, of the Colorado Constitution guarantees the defendant "an *impartial* jury of the county or district in which the offense is alleged to have been committed." (Emphasis added.) In interpreting constitutional provisions, just as in interpreting statutes, we must attempt to give meaning to every word. *See, e.g., Johnston v. City Council*, 177 Colo. 223, 228, 493 P.2d 651, 654 (1972). The constitutional provision states that the jury must not only be from the proper area, it must also be impartial. We cannot conclude, however, that the inability to obtain an impartial jury in the county where the offense was alleged to have been committed disables the courts of this state from bringing the defendant to trial when the defendant objects to a change of venue. Rather, we agree with the following analysis by the Supreme Court of North Dakota in *Barry v. Truax*, 13 N.D. 131, 99 N.W. 769, 771 (N.D.1904):

9. In *People v. Taylor*, 732 P.2d 1172, 1176 (Colo. 1987), this court discussed the "territorial principles relating to the prosecution of criminal cases" in determining the meaning of the compulsory joinder statute, section 18–1–408(2), 8B C.R.S. (1986). We held that "[t]he term 'district' [as used in Article II, Section 16] refers to 'a governmental area distinct from a county,' [citing *Aurora v. Rhodes*] and obviously includes a judicial district." *Id.* at 1176–77. However, our

> construction of the term "district" to include "judicial district" does not apply to all situations. In the context of *People v. Taylor*, which focused on the limits of the district attorney's power, "district" meant the territory served by the district attorney. Since a district attorney can initiate criminal prosecutions for crimes committed within the geographical boundaries of his judicial district, "district" meant judicial district.

Our duty in this case is therefore to ascertain whether it was the understanding of the framers of the Constitution, and the people who adopted it, that the right of trial by jury included, as one of its substantial elements, an absolute right to a trial by a jury of the county where the offense was committed.... [T]here is, in our opinion, convincing evidence ... that the right was conditioned upon the possibility of a fair and impartial trial being had in that county.

*See also State v. Holloway,* 19 N.M. 528, 146 P. 1066, 1067–72 (N.M.1914); *State ex rel. Hornbeck v. Durflinger,* 73 Ohio St. 154, 76 N.E. 291, 292–93 (Ohio 1905). Therefore, if a trial court finds, as in this case, that the defendant cannot be given a fair trial by an impartial jury in the county where the trial is pending, it may use its inherent powers to transfer the venue to another county. We hold that a change of venue under such circumstances is consistent with the defendant's rights under Article II, Section 16, even if the defendant objects to the change.

### C.

It remains to be determined whether the trial court properly exercised its power to change venue in the present case. Wafai contends that the trial court exceeded its powers or abused its discretion because the real reason for the change of venue was the trial court's concern over docket congestion, and not concern over inability to obtain an impartial jury. The defendant argues that the fact that jury selection in Douglas County would have caused congestion of the court's docket in other counties is not a valid reason for transferring venue to another county. *Cf. Halliburton v. County Court,* 672 P.2d 1006, 1009–10 (Colo.1983) (trial court abused its discretion in changing venue of civil case on date of trial over parties' objection because of docket crowding); *Carr v. District Court,* 190 Colo. 125, 543 P.2d 1253 (1975) (docket congestion does not excuse court's failure to try case within speedy trial period). He notes that at the time the change was ordered, three months remained in the speedy trial time period and another jury panel would have been available in Douglas County after two weeks. The defendant contends that in no event should the court have changed venue without first questioning that jury panel to determine if the potential jurors had been influenced by pretrial publicity.

■ The trial court in this case specifically found that a fair and expeditious trial was not possible in Douglas County. The court had exhausted five full jury panels and had not yet seated a jury. There had been a great deal of publicity about the murders and many of the jurors had heard about the case. Some had formed opinions on the merits of the case. The quashing of the initial group of prospective jurors attracted additional media attention. Although docket congestion was part of the trial court's concern, an independently sufficient reason for the venue change, as reflected by the trial court's order, was to assure the defendant a fair trial within the speedy trial period. Since the trial court in this case found that an impartial trial could not be had in Douglas County, and a reading of the voir dire examination supports that finding, we conclude that the trial court did not exceed its authority or abuse its discretion in ordering the change of venue.

■ Finally, the defendant argues that the trial court abused its discretion by the procedure it followed in issuing its order for a change of venue. Before exercising its inherent power to change venue a court should afford the parties an opportunity to object and should hold a hearing on any such objections. In the present case the court did not follow this procedure but did allow defense counsel the opportunity to register objections and to state their reasons after the change of venue order had been announced. The trial court was fully conversant with the facts by reason of having presided over the voir dire examination. The court considered counsel's argument and declined to change its ruling. We perceive no prejudice to the defendant by the procedure employed by the court.

### III.

In summary, we affirm the trial court's change of venue on its own motion, based upon the inherent power of a trial court to provide the defendant with a fair trial by an impartial jury. However, as the court in *Crocker v. Justices of Superior Court* admonished, this power "should be exercised with great caution and only after a solid foundation of fact has been first established. Manifestly it should be resorted to only in aid of justice...." 94 N.E. at 377. When the trial court determines that an impartial jury cannot be obtained, yet there is no motion for a change of venue, the court may act on its own motion to assure a fair trial. Accordingly, the judgment of the trial court is affirmed.