The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Timothy Ryan REED, Defendant–Appellee.

No. 05SA299.

Supreme Court of Colorado, En Banc.

April 10, 2006.

**348**

Carol Chambers, District Attorney, Eighteenth Judicial District, Andrew Cooper, Deputy District Attorney, Centennial, for Plaintiff/Appellant.

Springer and Steinberg, P.C., Harvey A. Steinberg, Michael P. Zweibel, Denver, for Defendant/Appellee.

Justice COATS delivered the Opinion of the Court.

The People brought an interlocutory appeal, by authority of sections 18–1–202(11) and 16–12–102(2), C.R.S. (2005), challenging a venue determination of the Arapahoe County District Court. The district court severed a number of criminal charges filed against the defendant in Arapahoe County in separate counts of a single, multi-count information, finding venue proper for the severed charges in Denver County. Because the district court failed to determine, however, whether the severed counts were also triable, within the meaning of section 18–1–202, in Arapahoe County, we reverse and remand for further proceedings.

## I.

The defendant, Timothy Ryan Reed, was charged in Arapahoe County with a number of crimes, arising from the alleged kidnapping and assault of Leon Beccue and the arrest of the defendant at his own home on the day of Beccue's release. Following a preliminary hearing and a suppression hearing, the defendant challenged the propriety of venue in Arapahoe County for the prosecution of a number of the individual charges. The district court heard the arguments of counsel and, in reliance on testimony from those prior hearings, severed certain counts of the multi-count information, finding venue proper in Denver County.

Testimony from the victim and investigating officers at the preliminary hearing indicated that the victim was assaulted by the defendant and one or more accomplices, between nine and ten o'clock on the night of October 23, 2003, in Arapahoe County. The victim testified that the men then forced him into a truck and transported him against his will to a vacant apartment in Denver. The victim was detained there until the next morning, when he managed to escape. Almost immediately, however, the defendant and another man arrived at the apartment complex and, armed with a shotgun, forced the victim into their car. They then drove him to his home in Jefferson County, from which they seized items of monetary value. Sometime in the early evening of October 24, following a forced trip to a pawn shop, the victim convinced the defendant to let him go and sought medical treatment.

At the suppression hearing, officers whom the district court expressly found credible testified that the Englewood police were called and a detective was sent to Swedish Memorial Hospital to interview the victim. After determining its location in Denver, police officers from both Englewood and Denver drove to the defendant's home about eight o'clock that evening. They discovered a stolen vehicle parked in the driveway, as well as brass knuckles and methamphetamine on the defendant's person. A handgun and items that had been seized from the victim's home were found during a search of the defendant's residence. The defendant told the officers that he had purchased the car from the victim for $13,000, only to discover later that it had been stolen. According to various officers, he admitted fighting with the victim in an attempt to get his money back; hitting the victim with the brass knuckles; and taking the drugs, and other things, from the victim in lieu of money to satisfy this "debt."

The District Attorney for the Eighteenth Judicial District charged the defendant in a single information with: 1) first degree kidnapping; 2) conspiracy to commit kidnapping; 3) possession of more than one gram of

methamphetamine (as a second offense); 4) first degree burglary; 5) aggravated robbery (with a shotgun); 6) first degree aggravated motor vehicle theft; 7) possession of methamphetamine with the intent to distribute; 8) second degree assault (with metallic knuckles); 9) possession of a weapon by a previous offender (both a shotgun and a handgun); 10) possession of an illegal weapon (metallic knuckles); 11) committing a crime of violence (kidnapping, assault, and robbery, with a shotgun, a handgun, and metallic knuckles); and 12) being a special drug offender (by having available a handgun while possessing methamphetamine). The information alleges that all counts were committed in Arapahoe County during the period of October 23 through 24, 2003. The district court found probable cause to bind over all of the charges for trial except first degree kidnapping, and it permitted the People to add a thirteenth count charging second degree kidnapping. The court also found that the defendant's consent to search his home was not voluntarily given, and it therefore suppressed the handgun and other items found during that search. In addition, it granted the defendant's motion to sever the charge of possession of a weapon by a previous offender, as relief from prejudicial joinder.

After hearing argument, incorporating its findings from previous hearings, and finding good cause for the defendant's failure to challenge venue in writing within 20 days of arraignment, the court turned to the "change of venue issue," which it characterized as also operating "as a prima facie severance of counts." It concluded that those charges resulting, originating, or deriving from evidence discovered at the defendant's home when the police arrested him were "distinct and separate" from the allegations of kidnapping and assault. Noting that severance of the methamphetamine and possession of a weapon by a previous offender counts was separately required, apparently because they would entail proof of prior offenses, the court found that venue was proper in Denver County for counts three and seven (possession of methamphetamine and possession with intent to distribute), counts nine and ten (possession of a weapon by a previous offender and possession of an illegal weapon), and

count six (aggravated motor vehicle theft), and it ordered those counts severed.

The People immediately filed a notice of interlocutory appeal, as authorized by sections 18–1–202(11), C.R.S. (2005) and 16–12–102(2), C.R.S. (2005).

## II.

The Colorado Constitution provides for trial in criminal prosecutions "by an impartial jury of the county or district in which the offense is alleged to have been committed." Colo. Const. art. II, § 16. We have construed the term "district" to allow the legislature the freedom to define the area within which a criminal trial may take place, as long as that area is confined to the vicinity in which the offense allegedly occurred. *Wafai v. People,* 750 P.2d 37, 46 (Colo.1988). Although we have noted that the legislature has not yet chosen to exercise its power to redefine the locality from which a jury can be drawn, *id.,* and has instead continued to limit venue in criminal actions to the county in which the crime was committed, *see* § 18–1–202(1), C.R.S. (2005), we have also noted that the legislature has chosen to expand the situs of various types of crimes, and crimes committed in various ways, statutorily deeming them to be committed, and therefore to be triable, in more than one county. *See People v. Taylor,* 732 P.2d 1172, 1177 (Colo.1987).

Prior to 1992, in the absence of any legislative provision to the contrary, a defendant's right to trial in the county where the crime was committed was vindicated at the trial itself, with the prosecution having an obligation to prove venue as alleged, just "as any other issue in the case." *People v. Cortez,* 737 P.2d 810, 811 (Colo.1987). If the issue was raised, *id.,* and the prosecution failed to prove venue to the satisfaction of the trier of fact, beyond a reasonable doubt, *see Tate v. People,* 125 Colo. 527, 247 P.2d 665, 669 (1952), the defendant was entitled to acquittal, *People v. Gould,* 193 Colo. 176, 563 P.2d 945, 946 (1977). Therefore, in a jury trial, unless there was not even sufficient evidence of the location of the crime to withstand a motion for judgment of acquittal, the issue was one for jury determination. *E.g., Clax-*

*ton v. People,* 164 Colo. 283, 434 P.2d 407, 410 (1967).

In 1992, however, the legislature radically changed the nature and effect of a venue determination, *see* Ch. 73, sec. 12, § 18–1–202(11), 1992 Colo. Sess. Laws 396, 402,[1] placing Colorado among a small minority of jurisdictions treating venue solely as a procedural prerequisite to prosecution. Wayne R. LaFave et al., *Criminal Procedure* § 16.1(g) (2d ed.1999) (citing similar procedural schemes in California, Illinois, Iowa, Louisiana, Maryland, and Utah); Nancy Hollander et al., *Wharton's Criminal Procedure* § 10:14 (14th ed.2005). No longer is an allegation of venue a matter to be proved to the satisfaction of the jury, as other elements of an offense, unless the statute defining the crime actually requires as much. § 18–1–202(11), C.R.S. (2005). Instead, any objection to the place of trial authorized by this provision is waived unless it is raised by written motion before trial, in the manner prescribed. *Id.*

Any challenge to the place of trial pursuant to section 18–1–202 is now to be resolved by the court, prior to trial and selection of the jury. *Id.* If the court finds that trial is not proper in the county in which the charges were filed, it is required to transfer the case to a court of appropriate jurisdiction in the proper county. *Id.* While the statute does not further describe the nature of this determination, by expressly excluding the jury from any role in vindicating the right to proper venue, it necessarily implies that the court is to act as the ultimate trier of fact, rather than merely to assess the adequacy of pleadings or the sufficiency of evidence for a jury determination. Similarly, while the court must resolve factual disputes about the location of relevant conduct and circumstances, in order to determine whether an offense is deemed to have been committed and triable in the county in which it was filed, the court must also interpret and apply legislative provisions designating the situs of the offense.

While the general assembly has included specific situs provisions throughout the criminal code, and in fact throughout the revised statutes, it has concentrated a number of general situs-expanding provisions in section 18–1–202 (Place of trial). We have previously noted, in particular, the legislature's expansion of the situs of offenses beyond the county in which the causative criminal conduct takes place or the proscribed result occurs to include any county "where an act in furtherance of the offense occurred." *Taylor,* 732 P.2d at 1177 (referring to § 18–1–202(1)). By contrast, however, because of its implications for mandatory joinder, *see* § 18–1–408(2), 8B C.R.S. (1986), we construed the more ambiguous provisions of subsection 202(7) as not intending to expand the situs of multiple crimes committed as part of the same criminal episode, but merely to grant authority to file criminal charges in any county within the same judicial district in which any individual crime in the episode could have been tried. *Taylor,* 732 P.2d at 1178. With its amendment immediately thereafter of that provision to include the words, "regardless of whether or not the counties are in the same judicial district," the general assembly has now left little doubt about its intent to expand even the situs of multiple crimes committed as part of the same criminal episode to all counties in which any one of them was committed and would be triable. Ch. 115, sec. 10, § 18–1–202(7), 1987

---

1. The entire subsection reads:
   Proof of the county in which the offense occurred or which county is the proper place for trial pursuant to this section shall not constitute an element of any offense and need not be proven by the prosecution at trial unless required by the statute defining the offense. Any challenge to the place of trial pursuant to this section shall be made by motion in writing no later than twenty days after arraignment, except for good cause shown. The court shall determine any such issue prior to the commencement of the trial and the selection of a jury. If the court finds that trial is not proper in the county in which the charges were filed, the court shall transfer the case to a court of appropriate jurisdiction in the proper county. Failure to challenge the place of trial as provided in this subsection (11) shall constitute waiver of any objection to the place of trial. Pursuant to section 16–12–102(2), C.R.S., the prosecution may file an interlocutory appeal of a decision transferring the case to another county.
   § 18–1–202(11), C.R.S.

Colo. Sess. Laws 603, 606.[2]

A criminal court also has the discretion to order a change of venue when adequate grounds are presented by the motion of a party, § 16–6–101, C.R.S. (2005); Crim. P. 21, or whenever it is necessary to obtain an impartial jury, *Wafai*, 750 P.2d at 44. In the absence of such grounds, however, the propriety of venue is a matter of fact and law, not discretion. It is not within the inherent power of courts to transfer a criminal prosecution from a county in which the legislature deems it committed and triable, merely because the court considers another county to be a more appropriate venue or more easily established as a proper situs of the offense.

## III.

Although the district court did not expressly order the severed counts transferred to Denver County, the clear import of its resolution of the defendant's venue challenge was that they could no longer be prosecuted in Arapahoe County. It is much less clear, however, that the district court found Arapahoe County to be an improper venue. On the contrary, because the court did not separately take evidence or make specific factual findings relative to the counts it chose to sever, and because it found venue to be proper in Arapahoe County for other counts with the same elements and appeared to credit witness statements militating against a finding of improper venue, it is at least as likely from the record on appeal that the district court never considered itself to be making a factual and legal determination that the severed offenses were not committed, within the contemplation of section 18–1–202, in Arapahoe County.

Without any explanation distinguishing the two, the court severed a count charging possession of a shotgun by a previous offender but chose not to sever a count charging aggravated robbery with a shotgun. Similarly, it severed a count charging possession of metallic knuckles, an illegal weapon, but chose not to sever a count charging commission of a crime of violence with metallic knuckles. Furthermore, without rejecting officer testimony that the defendant admitted acquiring the methamphetamine found on him from the victim as payment for a debt, or suppressing the defendant's statement, the court removed both counts of possession of the drugs.

The district court correctly noted that an offense based on the illegal possession of an item, at the time of a suspect's arrest for an earlier offense, does not imply, in and of itself, that it is also based on the act or series of acts for which the arrest was sought. *See* § 18–1–202(7), C.R.S. (2005). The court did not, however, acknowledge that such subsequent possession may have circumstantial value in establishing possession during the earlier episode. Nor did the court address or make factual findings concerning the prosecution's assertion that the kidnapping/assault episode beginning in Arapahoe was motivated by, and therefore constituted an act in furtherance of, the defendant's continued possession of the stolen vehicle, later found in his driveway. *Cf. People v. Freeman*, 668 P.2d 1371, 1380 (Colo.1983) (sufficient evidence of an act in furtherance when the act was closely related to a common criminal scheme, the act was clearly in the defendant's mind prior to the commission of the crime, the act was a motivating factor for the crime, and the act was used to conceal the crime).

With the adoption of section 18–1–202(11), the legislature has made clear that the propriety of venue in the county where the prosecution is commenced is to be resolved by the trial court prior to selection of a jury, and that any finding of improper venue is subject to interlocutory review. While there may be circumstances in which a separate hearing on venue is not necessary, the defendant is entitled to put the prosecution to its proof. By the same token, upon proper challenge by the defendant, the People must be given an opportunity to persuade the court of the situs of the charged offense. Meaningful

---

**2.** By amending the mandatory joinder provisions of section 18–1–408(2), the legislature has also, however, eliminated some of the "absurd" results we sought to avoid in *Taylor*. *See* Ch. 181, sec. 2, § 18–1–408(2), 1994 Colo. Sess. Laws 1048, 1049 (requiring defendant to object and demand joinder before jeopardy attaches in first trial).

review demands adequate factual findings concerning the conduct and circumstances relevant to the situs of the challenged offenses and an explanation of the court's understanding of the applicable law. The record below is inadequate for this purpose.

## IV.

Because there was no determination of the propriety of venue in Arapahoe County, the order of the district court dismissing counts three, six, seven, nine, and ten is reversed and the matter is returned for further proceedings consistent with this opinion.