## CHESHIRE.

### STATE v. ALBEE.

The venue may be changed in a criminal case in the supreme court on motion of the respondent. *State* v. *Sawyer*, 56 N. H. 175, overruled.

The common-law power of changing the venue in criminal cases upon motion of the respondent, when a fair and impartial trial cannot be had in the county where the fact was committed, was not abolished by the adoption of article 17 of the bill of rights.

Article 17 of the bill of rights, being a provision designed for the protection of the respondent, may be waived by him when a fair and impartial trial cannot be had in the county where the fact was committed.

MOTION by the respondent for a change of venue. At the April term, 1881, thirteen indictments were returned against the respondent for embezzling the funds of the Ashuelot Savings Bank in Winchester, and for various other offences connected with the alleged embezzlement. Upon the last day of the next term, after the cases were continued upon his motion, the respondent moved that the venue be changed, upon the ground that in this county he could not have a fair and impartial trial. Upon the evidence taken upon notice by both parties and submitted, the court found that there was good reason to believe that the respondent could not have a fair and impartial trial in this county, and, subject to the opinion of the full court, ordered that the venue be changed.

*The Attorney-General* and *E. P. Dole, Solicitor,* for the state, cited *State* v. *Sawyer*, 56 N. H. 175.

*D. H. Woodward, E. L. Cushing,* and *C. B. Eddy* (of Vermont), for the respondent.

SMITH, J. In *State* v. *Sawyer,* 56 N. H. 175, we denied the respondent's motion for a change of venue. The motion was made in the superior court while the indictment was pending in the circuit court, and there had been no transfer of any question of law. We denied the motion on the ground that we could not interfere with the order of business in the circuit court; also, because the respondent produced no evidence in support of his motion. Upon the constitutional question whether the court had the power to order a change of venue, we contented ourselves with this single remark: "As at present advised, we think no power exists in any court, under article 17 of the bill of rights, to order such change of venue." The question was not argued by counsel, and was decided principally upon the ground first mentioned. The question did not receive the deliberate attention of the court, coming before it in the informal way it did. We feel at liberty therefore to consider the question of a change of venue as an open one, and without being embarrassed by our action in 1875.

The respondent, indicted for embezzling the funds of a savings-bank, moves for a change of venue upon the ground that he cannot have a fair and impartial trial in the county where the offence is charged to have been committed. A hearing upon this motion has been had at the trial term, and the court has found "that there is good reason to believe that the respondent cannot have a fair and impartial trial" in this county, and has ordered a change of venue, subject to the opinion of the full court upon the power of the court to make such order. The finding that "there is good reason to believe," &c., is a sufficient finding of the fact that an impartial trial cannot be had. *Rex* v. *Hunt,* 3 B. & Al. 444; *Cochecho Railroad* v. *Farrington,* 26 N. H. 428, 445; *Hilliard* v. *Beattie,* 58 N. H. 112; 1 Bish. Cr. Proc., *ss.* 68–76.

The 17th article of our bill of rights is as follows: "In criminal prosecutions the trial of facts in the vicinity where they happen is so essential to the security of the life, liberty, and estate of the citizen, that no crime or offence ought to be tried in any other county than that in which it is committed, except in cases of general insurrection in any particular county, when it shall appear to the judges of the superior court that an impartial trial cannot be had in the county where the offence may be committed, and, upon their report, the legislature shall think proper to direct the trial in the nearest county in which an impartial trial can be obtained."

In the trial of civil causes, by the policy of the ancient law, the jury was to come from the neighborhood of the vill or place where the cause of action was laid in the declaration. Living in the neighborhood, they were the very country, or *pais,* to which the parties had appealed, and were supposed to know beforehand the

characters of the parties and witnesses. and therefore they better knew what credit to give the testimony. But this convenience was overbalanced by another very natural and almost unavoidable inconvenience: that jurors coming out of the immediate neighborhood would be apt to intermix their prejudices and partialities in the trial. To remove this difficulty, England, by successive statutes, abolished the requirement as to the number of hundredors there should be upon the panel, until it was finally enacted by the St. 24 Geo. 2, *c* 18, that in all actions, civil and criminal, the jury should come from the body of the county at large, and not from the particular neighborhood. 3 Bl. Com. 359, 360. By the common law the general rule was, that all offences must be inquired into, as well as tried, in the county where the fact is committed. 4 Bl. Com. 305. That learned commentator said,—"Our law has therefore wisely placed this strong and twofold barrier of a presentment and a trial by jury between the liberties of the people and the prerogative of the crown. . . . The founders of the English law have with excellent forecast contrived that no man should be called to answer to the king for any capital crime, unless upon the preparatory accusation of twelve or more of his fellow-subjects, the grand jury; and that the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors indifferently chosen, and superior to all suspicion." 4 Bl. Com. 349, 350. The sheriff is required to "return a panel of jurors, *liberos et legales homines, de vicineto,* that is, free holders, without just exception, and of the *visne* or neighborhood, which is interpreted to be of the county where the fact is committed." 4 Bl. Com. 350; 2 Hale P. C. 264; 2 Hawk. P. C. 403.

As the right of trial by a jury *de vicineto,* or of the *visne* or neighborhood, was given for the protection of the subject, so the power was early given to the court of king's bench for the protection also of the subject to remove the venue upon a suggestion duly supported that a fair and impartial trial cannot be had. 3 Bl. Com. 294; 3 Bl. Com. 350; 4 Bl. Com. 350; *Mayor of Poole* v. *Bennet,* 2 Str. 874; Rosc. Ev. 241; *Rex* v. *Holden,* 5 B. & Ad. 347; *Rex* v. *Harris,* 3 Bur. 1330; 1 Bish. Cr. Proc., ss. 68–76. Chitty says,—"At common law the venue should always be laid in the county where the offence is committed." 1 Chit. Cr. L. 177. "And even the king cannot by charter authorize the trial of an offence in another county." 1 Chit. Cr. L. 190; 60 Co. Lit. 125, *a.* and *b. n.* 1; Hawk., *b.* 2, *c.* 25, *s.* 35. "At common law, when a fair and impartial trial cannot be obtained, and the indictment has been removed into the king's bench by *certiorari,* the court have a power of directing the trial to take place in the next adjoining county when justice requires it." 1 Chit. Cr. L. 201; *Rex* v. *Nottingham,* 4 East 210. This rule of the com-

mon law, securing to the subject the right of trial in criminal prosecutions in the vicinity where the facts happen, as a protection to him against the power of the king, the framers of our constitution undertook to embody in that instrument as a protection to the citizen against the power of the state and of either department of its government. Massachusetts previously incorporated a similar provision in her declaration of rights, adopted in 1780. Article 13 reads as follows: "In criminal prosecutions, the verification of facts in the vicinity where they happen is one of the greatest securities of the life, liberty, and property of the citizen." It has been held that the court, in the absence of a statute, has no power to order a change of venue in a civil action. *Lincoln* v. *Prince*, 2 Mass. 544; *Cleveland* v. *Welsh*, 4 Mass. 591; *Hawkes* v. *Kennebeck*, 7 Mass. 461. It has also been held that this provision is not prohibitory of a trial of an offence in any other county than that in which it happened; nor is it affirmative of a right in the citizen to be tried in any particular county. It is merely declaratory of the sense of the people that in a criminal prosecution it is the right of the accused to require the charge to be proved in the vicinity or neighborhood where the fact happened. *Commonwealth* v. *Parker*, 2 Pick. 550, 553; *Commonwealth* v. *Costley*, 118 Mass. 1.

In *Cochecho Railroad* v. *Farrington*, 26 N. H. 428, 436, it was said that the practice of the courts of England to change the venue of transitory actions "became thoroughly engrafted upon the common law long before the independence of this country; and from that time forth not only has the practice prevailed in the courts of England, but the power is now exercised by the courts of very many if not all of our states, either by force of express statute, or the adoption of the common law into the jurisprudence of the same." The act of the provincial legislature of October 16, 1692, created a supreme court of judicature, empowered to have cognizance of all pleas, civil, criminal, and mixed, as fully and amply as the courts of king's bench, common pleas, and exchequer in England had. The same act created a court of common pleas with jurisdiction of all matters triable at common law where the damages did not exceed twenty pounds. In 1699 an inferior court of common pleas and a superior court of judicature were established, with the powers defined in the act of 1692. The act of 1699 remained in force until 1771, when the state was divided into counties, and superior and inferior courts established with the same jurisdiction as the courts established by the act of 1699 had. The judiciary acts of 1791, 1813, 1816, and 1832 conferred upon the courts thereby established the authority and powers previously held and exercised by the courts which they superseded, and substantially the same as those incorporated in chapters 171 and 172 of the Revised Statutes in force in 1853, when *Cochecho R. R.* v. *Farrington* was decided. It was held in that case that under the provincial government, after the division into counties, the superior

court and common pleas possessed the same power to change the venue as did the courts of England (*p.* 438), and therefore that the courts in 1853 had the power to change the venue in civil actions in proper cases.    *State* v. *Rollins*, 8 N. H. 550, decided that the body of the common law, and the English statutes in amendment of it, so far as they were applicable to our institutions and the circumstances of the country, were in force here upon the organization of the provincial government, and have been continued in force by the constitution, so far as they are not repugnant to that instrument, until altered or repealed by the legislature. This decision was reaffirmed in *Cochecho R. R.* v. *Farrington, supra*. The judiciary acts of 1855, 1859, 1874, and 1876 did not abridge the powers of the courts, but conferred upon them jurisdiction of pleas, civil, criminal, and mixed, as full and ample as that previously exercised by the courts of this state.

There remains the question whether by implication the power to order a change of venue in criminal actions is limited to the single contingency mentioned in article 17 of the bill of rights. Lord *Campbell* remarked that great caution should be observed in dealing with the maxim "*Expressio unius,*" &c., for the question of its application depends upon the intention of the party as discoverable upon the face of the instrument or of the transaction. *Saunders* v. *Evans*, 8 H. L. Cas. 729.    The object of the framers of the constitution, as already remarked, was to protect the subject against an unfair trial at a distance from the vicinity of the alleged crime and at a place selected by officials who might be hostile to the accused.    Hence the trial is required to take place in the county where the crime is charged to have been committed, so that the accused may have the benefit on his trial of his good character and standing with his neighbors if he has preserved them, and the benefit of such knowledge as the jury may possess of the witnesses who may give evidence against him; besides, he will be able with more certainty to secure the attendance of his own witnesses.    These are reasons why a fairer trial may be had in the vicinage of the fact than in a distant county.    But this is not universally true.    Occasions sometimes occur when from a combination of circumstances popular prejudices are aroused, and bitterness of feeling fills the popular mind.    Jurors, because they are human, may be swayed by an unjust public sentiment, and may be influenced by public prejudices.    It is not reasonable to suppose that the convention that formed the constitution of 1784 understood that such a state of popular feeling could only arise during a time of general insurrection, or intended that an accused citizen should be subjected to the expense, delay, and annoyance of procuring the legislative sanction to a change of venue, and that only after a report of the judges of the superior court.    Men who had enjoyed this protection under the British crown would not be likely to surrender it after engaging in an exhaustive war for seven

years to establish their independence. One of their grievances was the trampling under foot of the time-honored principle that trials for crime must be by a jury of the vicinage.

The benefit of statutory and constitutional provisions, both in civil and criminal jurisprudence, may be waived by a party interested. 1 Bish. Mar. & Div. 677; *The State* v. *Gurney*, 37 Me. 156; 1 Bish. Cr. L., s. 995. A person ought not to be heard to complain of that to which he has consented. For instance, he may not object to the grand jury after he has pleaded to the indictment; nor challenge a petit juror for a known cause after verdict; nor object after trial that a copy of the indictment was not furnished him, when the statute requires it; nor that inadmissible evidence was received without objection; nor that the jury separated after verdict with his consent. 1 Bish. Cr. L., ss. 996, 997. These are familiar° examples of the waiver of well recognized provisions, intended for the protection of a party. The cross-examination of a prisoner who volunteers himself as a witness is permissible, because by electing to testify he subjects himself to the scrutiny of a cross-examination, and consents to waive the constitutional provision that no subject shall be compelled to accuse or furnish evidence against himself. *Connors* v. *The People*, 50 N. Y. 240; *Brandon* v. *The People*, 42 N. Y. 265; *The State* v. *Archer*, 54 N. H. 465. Mr. Bishop says,—" If the defendant has consented to any step in the proceedings, or if it has been taken at his request, or he did not object to it at the proper time when he might, he cannot afterward complain, however contrary it was to his constitutional, statutory, or common-law rights. . . . In judicial proceedings this doctrine of waiver is a necessity; for without it they would rarely be carried on with success." 1 Bish. Cr. L., ss. 118, 119. Of the soundness of the decisions in *Cancemi* v. *The People*, 18 N. Y. 128, and other cases of that class in which the right of waiver has been denied, we express no opinion.

Whatever doubts may have existed of the right of a prisoner to waive statutory and constitutional provisions enacted for his protection, they may have arisen from the fact that anciently a prisoner on trial for a capital crime was not allowed counsel except to debate a point of law if one should arise. The duty of the judge to act as counsel for him usually consisted in seeing that the proceedings were regular and strictly legal. 4 Bl. Com. 355. Mr. Bishop says, " the consequence of which was, that, as the law does not suffer a party to be prejudiced by an act of the court, if one through the advice or oversight of the judge omitted to make an available objection, or consented to relinquish a right, this was deemed error of law of which he could take advantage. In this way the rule would become established that a particular right could not be waived; and, when afterward counsel were allowed prisoners, and the judges ceased to advise them, it might not be obvious whether or not the rule denying waiver would cease also

in these altered circumstances in obedience to the maxim, '*Cessante ratione legis, cessat ipsa lex.*'"    1 Bish. Cr. Proc., s. 120.

A statute allowing a change of venue is not void as conflicting with the constitutional right to be tried in the county where the prisoner is indicted.    1 Bish. Cr. Proc., s. 50; *Dula* v. *The State,* 8 Yerg. 511; *Perteet* v. *The People,* 70 Ill. 171.    But the change can only be made with his consent.    *The State* v. *Denton,* 6 Cold. 539; *Wheeler* v. *The State,* 24 Wis. 52; *Dougan* v. *The State,* 30 Ark. 41; *Cochrane* v. *The State,* 6 Md. 400; *Bramlett* v. *The State,* 31 Ala. 376; *The State* v. *Gut,* 13 Minn. 341; *Gut* v. *The State,* 9 Wall. 35; 1 Bish. Cr. L., ss. 995–998; Cool. Con. Lim. 319 and note.

It is the respondent's privilege to be tried in the county where the offence was committed.    This provision in our bill of rights, designed for the protection of the accused, was regarded by the framers of the constitution as a privilege of the highest importance, because it would prevent the possibility of sending him for trial to a remote county, at a distance from friends, among strangers, and perhaps among parties animated by prejudices of a personal or partisan character.    *Gut* v. *State, supra,* 37.    But they did not intend to destroy his common-law right to a change of venue whenever a fair and impartial trial could not be had in the county where the fact happened.    The purpose of this constitutional provision was the protection, not the destruction, of individual rights.    The constitutional provision is an affirmance of the prisoner's common-law right not to be tried at a distance from the county in which his offence is charged; and this common-law and constitutional right he may waive for the purpose of securing the fair trial which the constitution guarantees.    A change of venue under such circumstances is calculated to preserve the system of jury trial in its purity, and thereby to increase the confidence of the community in its safety and usefulness.

Whether the emergency named in article 17 of the bill of rights would present an occasion which can be improved by the state, or by the state alone, to obtain a change of venue, and would be the only occasion on which the state can move for a change, we do not need to inquire.    Our conclusion is, that on the facts proved by the respondent, his motion can be granted.

*Case discharged.*

CARPENTER, J., did not sit: the others concurred.