Hillsborough-northern judicial district
No. 2006-584

PETITION OF THE STATE OF NEW HAMPSHIRE
(State v. Sven A. Johanson, Jr.)

Argued: May 10, 2007
Opinion Issued: September 5, 2007

*Kelly A. Ayotte,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the petitioner.

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Peter D. Anderson* and *Joel T. Emlen* on the brief, and *Mr. Anderson* orally), for the respondent.

DUGGAN, J. The State has petitioned for a writ of certiorari challenging the Superior Court's (Barry, J.) dismissal of the indictment against the respondent, Sven A. Johanson, Jr. See SUP. CT. R. 11. We grant the petition, vacate the dismissal and remand.

The parties do not dispute the following: The Cheshire County Grand Jury indicted the respondent on May 17, 2004, on a charge of falsifying physical evidence. See RSA 641:6 (2007). On June 14, 2004, after all judges regularly presiding in Cheshire County had recused themselves from the case, Chief Justice Robert Lynn transferred it to Hillsborough County Superior Court and specially assigned it to Judge James Barry. The respondent waived his right to a jury trial on September 1, 2005, and was tried before Judge Barry in May 2006.

When the State rested, the respondent moved for directed verdict, arguing that the bench trial in Hillsborough County violated his statutory and constitutional right to be tried in the county in which he allegedly committed the crime. See RSA 602:1 (2001); N.H. CONST. pt. I, art. 17. He also argued that the State had failed to prove proper venue beyond a reasonable doubt, which he asserted, was an element of the offense. See RSA 625:10, :11, III(e) (2007). Initially, the trial court denied the motion and completed the trial. The following day, before rendering a verdict, the court granted the motion and dismissed the indictment, ruling that the bench trial had violated Part I, Article 17 of the State Constitution. The State moved for reconsideration, which the court denied, and then sought a writ of certiorari here.

██ Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the discretion of the court. Petition of State of N.H. (State v. San Giovanni), 154 N.H. 671, 674 (2007); see SUP. CT. R. 11. We exercise our power to grant the writ sparingly and only where to do otherwise would result in substantial injustice. Petition of State of N.H. (State v. San Giovanni), 154 N.H. at 674. Certiorari review is limited to whether the trial court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. Id.

Here, we grant review because certiorari is the only avenue by which the State may seek relief from an order dismissing a case after jeopardy has attached. See RSA 606:10 (2001) (specifying the circumstances in which the State may appeal to the supreme court in a criminal case); see also Petition of State of N.H. (State v. Marcoux), 154 N.H. 118, 121 (2006).

I

The respondent contends that Part I, Article 17 of the State Constitution and RSA 602:1 granted him an absolute right to be tried in the county or judicial district in which the alleged crime was committed, which he could waive only by written motion based upon his inability to obtain a fair trial in that county or judicial district. Because he never moved for a change in venue, he asserts, "the State violated [his] constitutional and statutory rights by not bringing him to trial in Cheshire County." The State counters that the respondent waived his right to proper venue when he failed to object to the change of venue before trial. Thus, the State argues, the trial court erred when it granted the respondent's motion for a directed verdict based upon improper venue.

Resolving these issues requires that we interpret the relevant constitutional and statutory provisions. We review the trial court's interpretation of statutes and the constitution *de novo*. *Linehan v. Rockingham County Comm'rs*, 151 N.H. 276, 278 (2004).

We begin by examining RSA 602:1. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *ElderTrust of Fla. v. Town of Epsom*, 154 N.H. 693, 697 (2007). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.*

RSA 602:1 states in pertinent part: "Offenders shall be prosecuted and tried in the county or judicial district thereof in which the offense was committed." "The use of the word 'shall' is generally regarded as a command; although not controlling, it is significant as indicating the intent that the statute is mandatory. This is especially so where the purpose of the statute is to protect private rights." *McCarthy v. Wheeler*, 152 N.H. 643, 645 (2005). While on its face RSA 602:1 mandates that a criminal defendant be prosecuted and tried in the county or judicial district in which the offense was committed, it is silent with respect to the circumstances under which this right may or may not be waived. *See, e.g., Debonis v. Warden, N.H. State Prison*, 153 N.H. 603, 605 (2006) (while defendant has statutory right to hearing within forty-five days of arrest, he may waive this right). It is well-settled, however, that "[a] party may waive a . . . statut[ory] provision made for his benefit." *State v. Almy*, 67 N.H. 274, 280 (1892).

We next analyze Part I, Article 17 of the State Constitution. When interpreting a constitutional provision, we examine its purpose and intent.

*Baines v. N.H. Senate President,* 152 N.H. 124, 133 (2005). "By reviewing the history of the constitution and its amendments, the court endeavors to place itself as nearly as possible in the situation of the parties at the time the instrument was made, that it may gather their intention from the language used, viewed in the light of the surrounding circumstances." *Id.* (quotation omitted). "The language used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the constitution and the laws were adopted." *Id.* at 133-34 (quotation omitted).

When it was originally enacted in 1784, Part I, Article 17 of the State Constitution provided:

> In criminal prosecutions, the trial of facts in the vicinity where they happen, is so essential to the security of the life, liberty and estate of the citizen, that no crime or offence ought to be tried in any other county than that in which it is committed; except in cases of general insurrection in any particular county, when it shall appear to the Judges of the Superior Court, that an impartial trial cannot be had in the county where the offence may be committed, and upon their report, the assembly shall think proper to direct the trial in the nearest county in which an impartial trial can be obtained.

THE PERPETUAL LAWS OF THE STATE OF NEW HAMPSHIRE 12 (John Melcher ed. 1789). In 1792, this provision was amended to change the word "assembly" to "legislature." *See* S. MARSHALL, THE NEW HAMPSHIRE STATE CONSTITUTION: A REFERENCE GUIDE 77 (2004).

In *State v. Albee,* 61 N.H. 423, 425 (1881), we ruled that the framers intended this provision to be protective of the accused. We held that it was "merely declaratory of the sense of the people that in a criminal prosecution it is the right of the accused to require the charge to be proved in the vicinity or neighborhood where the fact happened." *Albee,* 61 N.H. at 426. We further ruled that the provision was a privilege "designed for the protection of the accused . . . [to] prevent the possibility of sending him for trial to a remote county, at a distance from friends, among strangers, and perhaps among parties animated by prejudices of a personal or partisan character." *Id.* at 429. The object of the framers "was to protect the subject against an unfair trial at a distance from the vicinity of the alleged crime and at a place selected by officials who might be hostile to the accused." *Id.* at 427. By requiring that the trial take place where the crime was alleged to have been committed, the framers intended that the accused "have the benefit on his trial of his good character and standing

with his neighbors if he has preserved them, and the benefit of such knowledge as the jury may possess of the witnesses who may give evidence against him" as well as the ability to secure the attendance of his own witnesses more easily. *Id.*

As with other constitutional privileges, *see Almy*, 67 N.H. at 280, we held in *Albee* that a criminal defendant could waive his right to proper venue, and that Part I, Article 17 did not set forth the exclusive circumstances under which such waiver could occur. *Albee*, 61 N.H. at 429. Although Part I, Article 17 appeared on its face to limit venue changes to times of "general insurrection" and to require *all* venue changes to be directed by the legislature upon receipt of a report from the superior court judges, we ruled that these provisions were not exclusive; the framers did not intend, by enacting the provision, to "destroy [a defendant's] common-law right to a change of venue whenever a fair and impartial trial could not be had in the county where the fact happened." *Id.* Thus, we held that a defendant could waive his common-law and constitutional right to be tried in the county where the crime was committed "for the purpose of securing the fair trial which the constitution guarantees." *Id.*

We left unanswered the question of whether the State could obtain a change of venue. *Id.* Ten years later, in *State v. Sawtelle*, 66 N.H. 488, 504 (1891), we held that the State could not obtain a change of venue except in the extraordinary case of general insurrection.

In 1978, Part I, Article 17 was amended, in effect, to codify our decision in *Albee*. The amendments to Part I, Article 17 made clear that a criminal defendant *could* obtain a change of venue even in the absence of a general insurrection and even without a report from the superior court judges and action by the legislature when he showed that a fair trial was impossible in the county or judicial district in which the crime occurred. *See* MARSHALL, *supra* at 77; *see also* JOURNAL OF CONSTITUTIONAL CONVENTION 232 (June 13, 1974). The amendments also made clear that the State no longer had a constitutional right to a change of venue. *See* JOURNAL OF CONSTITUTIONAL CONVENTION 232-33 (June 13, 1974). The amendments therefore deleted the reference to "general insurrection" and the requirement that all venue changes be directed by the legislature upon receipt of a report from the superior court judges. *See id.*; *see also Opinion of the Justices*, 126 N.H. 486, 488 (1985). The amendments also "broadened the concept of venue in a criminal case from only the county to also include a legislatively created judicial district." MARSHALL, *supra* at 77; *see Opinion of the Justices*, 126 N.H. at 489. "The 1978 Voters' Guide made the convincing point that changes of venue had already been ordered by state and federal courts, in violation of this provision of the state constitution." MARSHALL, *supra* at 77.

As amended in 1978, Part I, Article 17 of the State Constitution now provides:

> In criminal prosecutions, the trial of facts, in the vicinity where they happened, is so essential to the security of the life, liberty and estate of the citizen, that no crime or offense ought to be tried in any other county or judicial district than that in which it is committed; except in any case in any particular county or judicial district, upon motion by the defendant, and after a finding by the court that a fair and impartial trial cannot be had where the offense may be committed, the court shall direct the trial to a county or judicial district in which a fair and impartial trial can be obtained.

■ We disagree with the respondent that Part I, Article 17 grants him the right to be tried in the county or judicial district in which the crime was allegedly committed that he may waive *only* upon a written motion for change of venue based upon his inability to obtain a fair trial in the proper county or judicial district. To the contrary, Part I, Article 17 grants a criminal defendant two rights: the right to be tried where the crime was committed and the right to obtain a change of venue upon proof that he cannot obtain a fair trial there. Part I, Article 17 merely makes clear that, upon proof that a fair trial cannot be had in the county or judicial district where the crime occurred, the trial court lacks any discretion to deny a defendant's motion for change of venue. In other words, upon proof that a fair trial cannot be had in the place of proper venue, the defendant has an absolute right to a change of venue. In this way, as amended, Part I, Article 17 provides the *same* level of protection as the Federal Constitution, for as the United States Supreme Court has ruled, under that Constitution, "a defendant *must* be given an opportunity to show that a change of venue is required in his case" because of community prejudice. *Groppi v. Wisconsin*, 400 U.S. 505, 511 (1971) (emphasis added).

■ This provision is silent with respect to other circumstances under which a criminal defendant may waive his or her right to proper venue. The provision contains no language that "precludes or denies to the accused the power or option to waive [proper venue]" under other circumstances. *Almy*, 67 N.H. at 280. "We will not redraft the constitution in an attempt to make it conform to an intent not fairly expressed in it." *New Hampshire Munic. Trust Workers' Comp. Fund v. Flynn, Comm'r*, 133 N.H. 17, 21 (1990) (quotation omitted). Nothing in the history of the 1978 amendments to Part I, Article 17 nor in the plain language of those amendments suggest that the people intended that provision to set forth

the *only* method by which and the *only* reason for which a defendant could waive his constitutional right to proper venue. Importantly, nothing in the history or language of Part I, Article 17 indicates any intent to overrule our decision in *Albee*.

■ Courts in other jurisdictions have ruled that "[i]n common with almost all other defense rights, a defendant can waive his right to proper venue by an express statement of relinquishment." 4 W. LAFAVE ET AL., CRIMINAL PROCEDURE § 16.1(h), at 506 (1999); *see United States v. LiCausi*, 167 F.3d 36, 44 (1st Cir.) ("It is settled beyond peradventure that venue is a personal privilege which can be waived." (quotation omitted)), *cert. denied*, 528 U.S. 827 (1999). "In addition, in the federal system and a substantial majority of the states, in contrast to such trial guarantees as trial by jury and representation by counsel, venue can be 'waived'—or more accurately, 'forfeited'—by a defendant's 'silence', in the form of a failure to make a timely objection." 4 LAFAVE, *supra* at 506-07. "The conclusion that objections to venue are waived by silence or by acquiescence in the trial is supported by an examination of the nature of the rights that venue is meant to protect. Proper venue prevents the unfairness and hardship that may occur when an accused is prosecuted in a remote place." *State v. Blooflat*, 524 N.W.2d 482, 483-84 (Minn. Ct. App. 1994). Because once a trial has taken place, any hardship that may have occurred from conducting the trial in a remote place cannot be remedied, it is proper to place the burden of objecting to venue upon the criminal defendant. *See id.* at 484; *see* also 4 LAFAVE, *supra* at 507.

■ Generally, to avoid waiver, a defendant must raise any objections to venue before trial unless "the impropriety of venue only becomes apparent at the close of the government's case." *United States v. Delgado-Nunez*, 295 F.3d 494, 497 (5th Cir. 2002) (quotation omitted), *cert. denied*, 537 U.S. 1173 (2003); *see United States v. Roberts*, 308 F.3d 1147, 1151-52 (11th Cir. 2002), *cert. denied*, 538 U.S. 1064 (2003); *United States v. Perez*, 280 F.3d 318, 328 (3d Cir.), *cert. denied*, 537 U.S. 859 (2002). When the defendant is unaware of the error in venue until the prosecution presents its case, an objection to venue made at the close of the evidence is timely. *Roberts*, 308 F.3d at 1152. By contrast, when a criminal defendant knows all of the facts underlying his objection to venue before trial, his failure to object to venue before trial is deemed a waiver. *See Delgado-Nunez*, 295 F.3d at 497; *United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004).

In this case, we conclude that the respondent waived his constitutional and statutory right to proper venue. Every fact giving rise to his objection to venue in Hillsborough County was evident the moment the trial court changed venue to that county. *See Collins*, 372 F.3d at 633. Approximately

one month after a Cheshire County Grand Jury indicted him, the case was transferred to Hillsborough County for trial. The respondent knew or should have known then that venue in Hillsborough County for a crime allegedly committed in Cheshire County was improper. Not only did the respondent fail to object but, fourteen months after the case was transferred, he waived his right to a jury trial and asked to be tried by the Hillsborough County judge to which the case had been assigned. It was not until the close of the State's case that the respondent first objected to venue in Hillsborough County. Such objection, under the circumstances of this case, was untimely.

■ A holding that the respondent "did not waive his venue claim under these circumstances would create severe perverse incentives for criminal defendants in any case in which there are doubts over the legitimacy of venue." *Delgado-Nunez*, 295 F.3d at 497. "A defendant would be able to game the system and obtain a free second shot at an acquittal by waiting for his trial to conclude and then challenging venue in the event of a conviction." *Id.* "Even if—like [the defendant]—he was well aware of the potential defect in venue, he would have every incentive to forego an improper venue claim until after the trial is over." *Id.*; *see also* 4 LAFAVE, *supra* at 507-08. Accordingly, we hold that by failing to object to venue in Hillsborough County before trial, the respondent waived any claim to improper venue. The trial court's ruling to the contrary is therefore erroneous as a matter of law.

## II

The State requests that we vacate the trial court's decision and remand for further proceedings. The respondent argues that the Double Jeopardy Clause of the New Hampshire Constitution bars remand. *See* N.H. CONST. pt. I, art. 16. Because the respondent argues only under the State Constitution, we base our decision upon it alone, citing federal cases for guidance only. *See Gonya v. Comm'r, N.H. Ins. Dep't*, 153 N.H. 521, 524 (2006).

■ Part I, Article 16 of the New Hampshire Constitution provides that "no subject shall be liable to be tried, after an acquittal, for the same crime or offense." "The double jeopardy clause of the New Hampshire Constitution protects against successive prosecutions for the same offense after acquittal or after conviction, and against multiple punishments for the same offense." *State v. Guenzel*, 140 N.H. 685, 687 (1996). The respondent asserts that the trial court's directed verdict constituted an acquittal and that, therefore, if we were to vacate the trial court's decision and remand for additional proceedings, we would place him in additional

jeopardy. *See United States v. Pacheco,* 434 F.3d 106, 112 (1st Cir.), *cert. denied,* 126 S. Ct. 2312 (2006). He reasons that the trial court's decision is an acquittal because the court reviewed the State's evidence and determined that it failed to establish proper venue, beyond a reasonable doubt, and, therefore, was legally insufficient to sustain a conviction. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571 (1977).

"When evaluating a double jeopardy claim, a reviewing court first must ask whether jeopardy attached in the original trial court proceeding." *Pacheco,* 434 F.3d at 112 (quotation and brackets omitted). Here, the State concedes that jeopardy attached. *See State v. Courtemanche,* 142 N.H. 772, 773-74 (1998) (for purposes of Federal Double Jeopardy Clause, double jeopardy attaches in a bench trial when judge begins to hear evidence).

"But the conclusion that jeopardy has attached begins, rather than ends, the inquiry." *Pacheco,* 434 F.3d at 112. "Thus, we must take a further step and ask whether the trial court terminated jeopardy in a way that prevents reprosecution." *Id.* We conclude that the respondent's claim fails in this regard because the trial court's grant of directed verdict was not, in fact, a judgment of acquittal. *See id.*

"[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen Supply Co.,* 430 U.S. at 571 (citations omitted). "A resolution in the defendant's favor of a *necessary* factual element of the offense is a definitive determination that the defendant cannot be convicted." *Pacheco,* 434 F.3d at 112 (emphasis added).

■ There is no question that the trial court did not decide any of the material elements of the falsifying evidence charge and simply dismissed the charge for lack of venue. *See State v. Roybal,* 132 P.3d 598, 605 (N.M. Ct. App.), *cert. denied,* 132 P.3d 1039 (N.M. 2006). While venue is an element of every criminal offense, it is not a material element. *See* RSA 625:11, III(e), IV. Improper venue is not an error that stems from the insufficiency of evidence with respect to the guilt or innocence of the accused. *Sutherland v. Com.,* 368 S.E.2d 295, 298 (Va. Ct. App. 1988). "It implies nothing with respect to the guilt or innocence of the defendant." *Burks v. United States,* 437 U.S. 1, 15 (1978). However, "[i]t is the merits of the action that animate jeopardy concerns, and venue in this regard is wholly neutral, a matter of procedure." *United States v. Kaytso,* 868 F.2d 1020, 1021 (9th Cir. 1988). Because "[v]enue has nothing whatever to do with the guilt or innocence of a defendant," *State v. Hutcherson,* 790 S.W.2d 532, 535 (Tenn. 1990), dismissal of an indictment for improper

venue is not an adjudication on the merits and is thus distinguishable from a verdict of acquittal. *Roybal*, 132 P.3d at 605. Under these circumstances, double jeopardy is not implicated by the trial court's erroneous order dismissing the indictment and directing verdict for the respondent. *See id.* We conclude, therefore, that the Double Jeopardy Clause of the State Constitution does not bar remand in this case.

The dissent authored by Justice Galway implies that it is immaterial that proper venue does not bear upon the respondent's guilt or innocence. To the contrary, whether a trial court has dismissed an indictment for a reason that bears upon a criminal defendant's guilt or innocence is the "touchstone" upon which appellate courts rely to decide whether the Double Jeopardy Clause bars the defendant's retrial. 5 W. LaFave et al., Criminal Procedure § 25.3(a), at 666 (2d ed. 1999); *see Burks*, 437 U.S. at 15; *see also United States v. Scott*, 437 U.S. 82 (1978). Where, as here, a criminal defendant has deliberately chosen "to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, [he] suffers no injury cognizable under the Double Jeopardy Clause" by his retrial. *Scott*, 437 U.S. at 98-99. "Thus, a trial court's ruling that the prosecution's case-in-chief failed to establish venue, though framed as a judgment of acquittal, does not preclude retrial because venue is an element more procedural than substantive that does not go to culpability." 5 LaFave, *supra* at 666 (quotation omitted).

Finally, as neither of the parties raised the issues discussed in the dissent authored by Chief Justice Broderick, we do not address them here. We disagree with the Chief Justice that the trial court's change of venue placed the respondent in a "Catch-22" position. To the contrary, nothing prevented the respondent during the approximately fourteen-month period that the case was pending in Hillsborough County from filing a motion to change venue back to Cheshire County. More importantly, however, none of the issues the Chief Justice addresses in his dissent is before us. They were neither briefed nor argued orally. Specifically, we do not address the constitutionality of Chief Justice Lynn's *sua sponte* order transferring the case from Cheshire County to Hillsborough County.

For all of the above reasons, we grant the State's petition, vacate the trial court's decision and remand for further proceedings consistent with this opinion.

*Petition granted; dismissal vacated; and remanded.*

DALIANIS and HICKS, JJ., concurred; BRODERICK, C.J., and GALWAY, J., dissented.

BRODERICK, C.J., dissenting. Because I believe the change of venue in this case was unconstitutional, thus rendering the entire proceeding in Hillsborough County void *ab initio*, I respectfully dissent.

When the trial judge granted the respondent's motion for a directed verdict, he explained:

> A review of the file indicates that no motion was ever filed by defendant or by the court or by the presiding justices for a change of venue, and that no reason therefore was stated other than the fact that the two presiding justices had recused themselves, and the defendant obviously did not waive any right that he had pursuant to Part 1 Article 17 of the constitution and has objected to it at the close of the State's case, and the court finds that the change of venue in the absence of the defendant as it occurred in this case was a violation of his right under the state constitution, and that his right having been violated the indictment is dismissed.

The order dismissing the indictment entailed two rulings: (1) that venue was changed from Cheshire County to Hillsborough County in violation of Part I, Article 17 of the State Constitution; and (2) that the respondent "obviously did not waive" his rights under that provision.

In its petition, the State has raised but a single issue: "Whether the [respondent] waived his objection to venue, after the Chief Justice had transferred the case from Cheshire County to a judge sitting in Hillsborough County, where the [respondent] filed a motion in Hillsborough County waiving jury trial and requesting a trial by the presiding judge, and failed to object to venue until after the State had rested its case." In other words, the State has not argued, as a discrete issue in its petition, that the trial judge erred in ruling that venue was changed in violation of the constitution. However, given that the State has appealed the trial judge's ruling that venue was changed unconstitutionally, it is not unreasonable to read the State's petition as challenging that ruling. Moreover, as it was the trial court's unilateral decision to change venue that made venue improper, I cannot see how we can consider the issue of waiver without also considering the judicial act that created the situation that brought the respondent's constitutional rights into play. I believe the constitutionality of the trial court's order changing venue is properly before us in this case.

It is manifest in decisions from other jurisdictions that a criminal defendant may, by remaining silent or by participating in court proceedings, waive his or her objection to venue when a prosecution has been brought in a court where venue is not proper. *See, e.g., State v. Tommy Y., Jr.*, 637 S.E.2d 628, 632-36 (W. Va. 2006) (holding that subject of delinquency petition waived objection to petition's failure to set out venue by waiting until close of State's case to object); *Muir v. Nebraska Dept. of Motor Vehicles*, 618 N.W.2d 444, 450 (Neb. 2000) ("By virtue of Muir's participation in the telephonic hearing without objecting to the hearing location, he waived any objection he might have had to the venue of the proceedings under [Neb. Rev. Stat.] § 60-6,205(6)(a) [(reissue 1998)]."); *State v. Dent*, 869 P.2d 392, 399 (Wash. 1994) ("We hold that a criminal defendant waives any challenge to venue by failing to present it by the time jeopardy attaches. Jeopardy attaches in a . . . bench trial when the court begins to hear evidence." (quotation omitted)); *State v. Lopez*, 508 P.2d 1292, 1294 (N.M. 1973) ("this right to be tried in the county or district [in which the offense is alleged to have been committed is] a right or privilege . . . which . . . may be waived by an accused person in a number of ways . . . . [W]hen he goes to trial in another judicial district, without objection on his part, he has waived the privilege, and cannot be heard to say that the court trying him was without jurisdiction." (quotation omitted)). To similar effect are all the federal cases upon which the majority relies. Representative of those decisions is the following language from *United States v. Delgado-Nunez*, 295 F.3d 494, 496 (5th Cir. 2002) (quotation omitted), *cert. denied*, 537 U.S. 1173 (2003): "A defendant indicted by an instrument which lacks sufficient allegations to establish venue waives any future challenges by failing to object before trial." Here, of course, there was nothing wrong with the indictment as it related to venue; it was brought by a Cheshire County grand jury, in the Cheshire County Superior Court, and alleged a crime that took place, at least in part, in Cheshire County. In this case, venue was not improper at the outset, but only after it was unilaterally changed to Hillsborough County. The majority refers to no cases, nor have I found any, addressing the issue of waiver when venue is initially proper but has been rendered improper by a unilateral change of venue directed by the trial court for administrative reasons. And, to be clear, this case involves not the waiver of an objection to improper venue, but the purported waiver of an objection to the trial court's change of venue.

The majority holds that the respondent waived his objection to venue through a combination of silence or acquiescence, and it puts future defendants on notice that they must act sooner than the respondent did in this case in order to avoid waiver. On the practical side, however, it is easy

to see the merits of the respondent's position. In another of the cases upon which the majority relies, the Fourth Circuit held that "if an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of the evidence." *United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004). The *Collins* court went on to explain that "a defendant does not waive venue unless the indictment clearly reveals the venue defect but the defendant fails to object." *Id.* (brackets and quotation omitted). At least on the surface, the facts of this case seem to fit the rule stated in *Collins*; the indictment properly alleged venue, but, albeit because of the change of venue, the evidence at trial did not establish that the alleged crime was committed in the county where the respondent was tried. More importantly, while the majority would have a defendant subjected to a *sua sponte* change of venue act more quickly than the respondent did here, it provides no guidance regarding what form that action should take.

One option might be a motion to reconsider the order changing venue, but practical difficulties abound. Here, the order changing venue was an order of the Cheshire County Superior Court. Two days after the order changing venue was issued, the clerk of the Cheshire County Superior Court issued a notice of decision that also announced the transfer of the file in the respondent's case to the Northern District of Hillsborough County Superior Court, "for all purposes." Thus, it appears likely that before the end of the ten-day reconsideration period, *see* SUPER. CT. R. 59-A(1), there was no longer a pending case in Cheshire County in which the respondent could have filed a motion for reconsideration. Filing an objection of some sort in Hillsborough County would have presented its own difficulties; namely, appearing to consent to venue in that county by participating in litigation there. My point is that at the moment the trial court changed venue, on its own motion and without giving the respondent an opportunity to object beforehand, it placed the respondent in a "Catch-22" position with no clear way out. Moreover, I do not share the majority's opinion the respondent's constitutional right to a trial in Cheshire County was adequately protected by the mechanism of a motion to change venue back to Cheshire County. Part I, Article 17 allows a change of venue upon a defendant's motion only upon a finding by the trial court that a fair and impartial trial cannot be had in the county or district where trial has originally been set.

In light of the position in which the respondent was placed, and the lack of guidance in either the law of this state or the decisions of other jurisdictions regarding the procedure for objecting to a *sua sponte* change of venue—as opposed to merely objecting to a defect in venue apparent on the face of a charging document—I am unconvinced that it is possible to

deal with the question of waiver without also addressing the constitutionality of the order changing venue, an issue ostensibly not raised in the petitioner's brief.

The right of a criminal defendant to be tried in the county or district in which the alleged crime took place is granted by the State Constitution, which provides, in pertinent part:

> In criminal prosecutions, the trial of facts, in the vicinity where they happened, is so essential to the security of the life, liberty and estate of the citizen, that no crime or offense ought to be tried in any other county or judicial district than that in which it is committed; except in any case in any particular county or judicial district, upon motion by the defendant, and after a finding by the court that a fair and impartial trial cannot be had where the offense may be committed, the court shall direct the trial to a county or judicial district in which a fair and impartial trial can be obtained.

N.H. CONST. pt. I, art. 17.

Both parties agree that the respondent had a constitutional right to be tried in Cheshire County. The petitioner argues, however, that once the respondent failed to object to the order changing venue or, at the very latest, when he filed his first pleading in Hillsborough County Superior Court, he waived his constitutional right to a trial in Cheshire County. While we have held that a defendant may waive his right to be tried in the county or district in which the alleged crime took place, "for the purpose of securing the fair trial which the constitution guarantees," *State v. Albee*, 61 N.H. 423, 429 (1881), the waiver at issue in *Albee* took the form of the defendant's motion to change venue, *id.*, and no such motion was ever filed in this case. The trial court's authority to grant a defendant's motion to change venue was at issue in *Albee* because the version of Part I, Article 17 in force at the time, unlike the version in force today, did not mention the defendant's right to file a motion to change venue, but only granted the justices of the superior court the authority to change venue "in cases of general insurrection in any particular county, when it shall appear to [them] that an impartial trial cannot be had in the county where the offence may be committed." *Id.* at 424. As we explained in *Albee*, Part I, Article 17, as then in force, was "not intend[ed] to destroy [the defendant's] common-law right to a change of venue whenever a fair and impartial trial could not be had in the county where the fact happened." *Id.* at 429. When Part I, Article 17 was amended in 1978, the common law right we recognized in *Albee* was established as a constitutional right.

At the time *Albee* was decided, Part I, Article 17 of the State Constitution provided:

> In criminal prosecutions the trial of facts in the vicinity where they happen is so essential to the security of the life, liberty, and estate of the citizen, that no crime or offence ought to be tried in any other county than that in which it is committed, except in cases of general insurrection in any particular county, when it shall appear to the judges of the superior court that an impartial trial cannot be had in the county where the offence may be committed, and, upon their report, the legislature shall think proper to direct the trial in the nearest county in which an impartial trial can be obtained.

*Id.* (quotation omitted). In *Albee* we explained:

> Whether the emergency named in article 17 of the bill of rights would present an occasion which can be improved by the state, or by the state alone, to obtain a change of venue, and would be the only occasion on which the state can move for a change, we do not need to inquire.

*Id.*; *see also State v. Sawtelle*, 66 N.H. 488, 504 (1891) ("The state cannot have a change of venue except in the extraordinary case of a general insurrection. Unless the defendant asks for a change of venue, he cannot be tried 'in any other county than that in which' the offence was committed." (citations omitted)). Part I, Article 17 was amended in 1978 and now provides that venue may be changed "upon motion by the defendant, and after a finding by the court that a fair and impartial trial cannot be had where the offense may be committed." Since 1978, we have not had the occasion to decide whether a change of venue may be initiated by the State, as prosecutor, or by the trial court upon its own motion.

While the amendment of Part I, Article 17 shifted the initiative from the judges of the superior court to the defendant to move for a change of venue, both versions of Article 17 specify a single reason for transferring a case from one county or district to another: to secure a fair and impartial trial. Conspicuously absent from the State Constitution, the relevant statutes and rules of court and our decisions is *any* articulated justification for a change of venue other than providing a fair and impartial trial.

We have never decided whether a trial court has the authority to change venue on its own motion, or whether venue may be changed for any reason other than to provide the defendant a fair and impartial trial. However, when we recognized the defendant's common-law right to move for a change of venue in *Albee*, we explained that Part I, Article 17 was

"designed for the protection of the accused," *Albee*, 61 N.H. at 429, and that its purpose was "the protection, not the destruction, of individual rights," *id.* We further explained that what was protected was the defendant's right to a fair and impartial trial. *Id.* Nowhere in our cases is Part I, Article 17 described as a tool for accommodating judicial convenience. Moreover, while Part I, Article 17 sets out the finding a trial court must make before changing venue upon motion by the defendant, it is silent regarding the finding a trial court must make before it can change venue upon its own motion. I tend to agree with Justice Galway that the defendant alone has the power to move for a change of venue. But even if venue may be changed upon the trial court's own motion, it would be anomalous indeed, given the acknowledged purpose of Part I, Article 17 to protect the rights of the defendant, to allow the trial court to change venue for any reason other than securing a fair and impartial trial.

"All fifty-two jurisdictions recognize judicial authority to grant a change of venue on a timely defense motion where needed to ensure that the defendant receives a fair trial." 4 W. LAFAVE ET AL., CRIMINAL PROCEDURE § 16.3(b), at 545 (2d ed. 1999). Change of venue on the court's own motion is another matter.

> Roughly a dozen states have provisions authorizing the court to grant a change of venue on its own motion, notwithstanding the objections of the parties. Those provisions differ dramatically in the grounds they accept for the change. Among the grounds recognized in one or more states are: (1) the threat of violence against the defendant or disruption of the proceedings; (2) the exhaustion of so many jury panels as to clearly indicate that it will be impossible to secure a jury to try [the] cause in the county; (3) a community so prejudiced against the defendant that a fair and impartial trial cannot be had in the county of prosecution; (4) a trial, alike fair and impartial to the accused and to the State, cannot, from any cause, be had in the county in which the case is pending; and (5) the interest of sound judicial administration, which encompasses concerns relating to providing a fair trial, witness convenience, and such matters as court congestion. In several states, an inherent judicial authority to change venue is recognized as to a change needed to obtain a fair and impartial trial. Most states, however, view the absence of a statutory authorization as having abrogated any authority for sua sponte venue changes that existed at common law.

*Id.* § 16.3(f), at 557-58 (quotations and footnotes omitted). *But see Wafai v. People*, 750 P.2d 37, 48 (Colo. 1988) (declining to decide whether docket

congestion was proper reason for changing venue when trial court had "an independently sufficient reason for the venue change ... [*i.e.,*] to assure the defendant a fair trial within the speedy trial period"). Typical of those opinions recognizing the trial court's inherent power to change venue upon its own motion is the following, from the Colorado Supreme Court:

> In summary, we affirm the trial court's change of venue on its own motion, based upon *the inherent power of a trial court to provide the defendant with a fair trial by an impartial jury.* However, as the court in *Crocker v. Justices of Superior Court* admonished, this power "should be exercised with great caution and only after a solid foundation of fact has been first established. *Manifestly it should be resorted to only in aid of justice ....*" [*Crocker v. Justices of Superior Court,*] 94 N.E. [369,] 377 [(Mass. 1911)]. When the trial court determines that an impartial jury cannot be obtained, yet there is no motion for a change of venue, the court may act on its own motion to assure a fair trial.

*Id.* at 49 (emphases added).

New Hampshire does not by statute authorize a trial court to change the venue of a criminal trial. If, against the weight of authority from other jurisdictions, we were to recognize under the common law that trial courts have the inherent authority to change the venue of criminal trials upon their own motion, I am confident we would limit that authority to the achievement of a single goal: a fair and impartial trial. Because the change of venue in this case was not supported by any findings concerning the availability of a fair and impartial trial for the defendant in Cheshire County, I believe the trial judge correctly ruled that the change of venue was unconstitutional, and I would hold that under Part I, Article 17 of the State Constitution, a trial court in a criminal case may not, upon its own motion and without the express consent of the defendant, transfer a case from one county or district to another for reasons wholly unrelated to preserving the defendant's constitutional right to a fair and impartial trial.

Such a holding would leave undecided a number of questions, including whether a trial court may change venue, upon its own motion and over a defendant's objection, when the purpose of the change of venue is to secure a fair and impartial trial, protect the safety of the defendant or protect other constitutional rights, such as the right to a speedy trial. The Idaho Supreme Court has aptly explained one good reason for a rule disallowing any change of venue upon a trial court's own motion: "under [such a rule], both parties have an opportunity to present their views on the necessity for a change of venue to the court before its decision on the issue." *State v. Ash*, 493 P.2d 701, 704 (Idaho 1972); *cf. Wafai*, 750 P.2d at

48 ("Before exercising its inherent power to change venue a court should afford the parties an opportunity to object and should hold a hearing on any such objections."). As I have already noted, the concerns expressed in *Ash* were, in fact, realized in this case; the change of venue was a *fait accompli* by the time the respondent learned of it, and so he was afforded no opportunity to present his views or object, other than by filing a motion to reconsider in a court where his case was no longer pending, or litigating his case in Hillsborough County, the venue to which he objected.

Because the majority bases its decision upon waiver, and I would decide the case based upon the unconstitutionality of the venue change, I also disagree with the majority's ultimate disposition of this case. Although it is not perfectly clear, it appears that we are remanding the case to Hillsborough County for delivery of a verdict based upon the trial that has already been conducted there. In my view, however, given that the change of venue was unconstitutional, the entire proceeding in Hillsborough County was void *ab* initio—a legal nullity. Thus, we are sending this case back for a verdict from a court that lacks constitutional authority to render one. Accordingly, I would remand to the trial court with instructions to transfer the case back to Cheshire County, where venue is undeniably proper. The current remedy for improper venue, it seems to me, is a trial in a county where venue is proper. Moreover, trial in Cheshire County would not implicate double jeopardy concerns for an even more fundamental reason than those stated by the majority: jeopardy did not attach in Hillsborough County, nor could it have attached there, because the entire proceeding there was a legal nullity. The disposition I advocate honors the respondent's constitutional rights under Part I, Article 17, does not subject him to double jeopardy and denies him any benefit of "gaming the system." *See Delgado-Nunez*, 295 F.3d at 497 ("A defendant would be able to game the system and obtain a free second shot at an acquittal by waiting for his trial to conclude and then challenging venue in the event of a conviction.").

I readily concede that in light of the relief the respondent requested from the trial court—a judgment of acquittal based upon the State's failure to prove venue—and the manner in which he requested it—by means of a motion filed at the close of the State's case in a one-day trial—it would not be unfair to accuse him of trying to "game the system" by attacking venue only after jeopardy had attached. However, we have a greater concern than preventing this particular defendant from successfully gaming the system; our attention must be directed toward the next criminal defendant subjected to a *sua sponte* change of venue. I worry that under today's holding, a trial court could change venue for any reason at all, and that ten days later, after the running of the

reconsideration period, the defendant, through understandable inaction, could be found to have "waived" his right to contest venue. This does not seem a fitting way to treat a constitutional right.

Finally, I note that the trial court could have avoided this appeal entirely by: (1) specially assigning a trial judge and directing that the trial continue in Cheshire County; or (2) seeking the respondent's consent beforehand. The former procedure would have resulted in a trial in the proper venue and embodies what I believe to be the correct balance between judicial convenience and a defendant's rights under Part I, Article 17 of the State Constitution. The latter procedure would have foreclosed any subsequent meritorious complaint by the defendant that he was tried in the wrong venue. By following one or the other of these two suggestions, future trial courts can preserve the constitutional rights of criminal defendants and prevent us from having to decide the issues I have raised in this dissent.

To conclude, I would affirm the trial judge's ruling that venue was changed unconstitutionally, and I would further hold that any proceeding conducted after an unlawful *sua sponte* change of venue is void *ab initio*—a legal nullity—and for that reason cannot be revived by a defendant's subsequent failure to object. Accordingly, I would decide this case by holding that venue was never proper in Hillsborough County, that the respondent's objection to venue was timely, and that because the Hillsborough County proceedings were a legal nullity involving neither the attachment of jeopardy nor a judgment of acquittal, the proper remedy is a remand with instructions to transfer the case back to Cheshire County for a trial in the correct venue.

GALWAY, J., dissenting. The defendant argues that Part I, Article 17 of the New Hampshire Constitution grants him the right to be tried in the county in which the alleged crime was committed, and that he could waive that right only by moving the court to transfer the case and by demonstrating that he could not get a fair and impartial trial in that county. Additionally, the defendant contends that principles of double jeopardy prevent him from being tried again should this matter be remanded. The majority's opinion, however, agrees with the State's arguments that the defendant waived, or forfeited, his right to trial in the county where the crime was alleged to have occurred by his silence or inaction and that double jeopardy does not bar his retrial. While the majority's opinion holds some appeal as a matter of public policy, I believe it misinterprets the relevant law, and I, therefore, dissent.

When interpreting a constitutional provision, we look to its purpose and intent, bearing in mind that we will give the words in question the meaning they must be presumed to have had to the electorate when the vote was

cast. *Petition of Below*, 151 N.H. 135, 139 (2004). "The language used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the constitution and the laws were adopted." *Id.* (quotation and ellipsis omitted).

When Part I, Article 17 was originally enacted it read:

> In criminal prosecutions, the trial of facts in the vicinity where they happen is so essential to the security of the life, liberty and estate of the citizen, that no crime or offence ought to be tried in any other county than that in which it is committed; except in the cases of general insurrection in any particular county, when it shall appear to the Judges of the Superior Court, that an impartial trial cannot be had in the county where the offence may be committed, and upon their report, the assembly shall think proper to direct the trial in the nearest county in which an impartial trial can be obtained.

THE PERPETUAL LAWS OF THE STATE OF NEW HAMPSHIRE 12 (John Melcher ed. 1789). Other than the minor change from "assembly" to "legislature," this provision remained unchanged for nearly 200 years. *See* S. MARSHALL, THE NEW HAMPSHIRE STATE CONSTITUTION A REFERENCE GUIDE 77 (2004).

In *State v. Albee*, 61 N.H. 423, 425 (1881), one of the few cases directly interpreting this provision, we recognized that the only exception to the requirement in Part I, Article 17 that venue be placed in the county where the crime was alleged to have occurred was in the case of a "general insurrection." We held, however, that despite this single exception, a defendant could also waive venue in a particular county when a fair trial could not be had. *Id.* at 427. This was so, we stated, because the framers of the provision did not intend to destroy a defendant's common-law right to a change of venue when a fair and impartial trial could not be had in the county where the crime was allegedly committed. *Id.* Nevertheless, we also held in *Albee*, that this common-law right, which the framers could not be presumed to have destroyed, could be waived by a defendant's silence. *Id.* at 428. The majority concludes that in 1978, Part I, Article 17 was amended, in effect, to codify *Albee*. I disagree.

Nothing in the record of the constitutional convention at which the amended language of Part I, Article 17 was discussed and adopted indicates that the delegates paid any heed to the ruling in *Albee* that a defendant could waive proper venue in any case other than a "general insurrection." According to the committee report on the resolution to amend Part I, Article 17:

> *Article 17 as presently worded provides procedure for change of venue only in cases of general insurrection* and refers only to "counties." Resolution eliminates provision as to "general insurrection," broadens "counties" to include "judicial districts" and provides for a change of venue on motion of defendant when fair and impartial trial cannot be had.

JOURNAL OF THE CONVENTION TO REVISE THE CONSTITUTION 232 (June 13, 1974) (emphasis added); *see also* MARSHALL, *supra* at 77 ("Until 1978, criminal cases had to be tried within the county in which the crime occurred, except in cases of general insurrection."). Thus, while the effect of the 1978 amendment may be similar to that of *Albee*, in that it permitted a defendant to waive venue in a particular county, I do not believe there is a basis to conclude that the 1978 amendment, in effect, codified *Albee*. This is especially true when one considers the effect of the amendment on the *method* by which a defendant could waive his right to venue in a particular county.

Part I, Article 17, as it currently exists, does that which we said was the intent of the framers in *Albee*—it protects the right of the defendant to change the venue of prosecution when a fair and impartial trial cannot be had. When *Albee* was decided, however, the Constitution did not define any *method for the defendant* to invoke that right regardless of the fairness of a trial, and only permitted changes in the case of a general insurrection. It was in the face of this omission that we held both that a defendant could change venue when a fair trial could not be obtained and that a defendant could waive the right to change venue by silence or inaction. No such infirmity continues to infect Part I, Article 17. Following the 1978 amendment, Part I, Article 17 not only specifically provides a defendant the right to change venue when a fair trial may not be had, but also prescribes the *procedure* for doing so, by requiring that changes in venue be made "upon motion by the defendant." Thus, to the extent it protects a defendant's right to obtain a change in venue when a fair trial cannot be had, Part I, Article 17 has an effect similar to *Albee*. Because, however, Part I, Article 17 now explicitly provides a particular procedure for obtaining that change, the conclusion in *Albee* that venue may be waived by silence can no longer be considered the law of this state.

The majority next concludes that Part I, Article 17, as presently written, grants a criminal defendant two rights: the right to be tried where the crime was committed and the right to obtain a change of venue upon proof that he cannot obtain a fair trial there. The majority's formulation, however, excludes the express language of the provision that a change in venue may be had "upon motion by the defendant, *and* after a finding by

the court that a fair and impartial trial cannot be had where the offense may be committed . . . ." (emphasis added). The use of the conjunctive signifies that both the defendant's motion and a finding by the court are required. Thus, the second right referenced by the majority ought to state that a defendant has the right to obtain a change of venue upon his motion and proof that he cannot obtain a fair trial. To hold otherwise, is to ignore the clear words of the Constitution that a change in venue is to be based upon an affirmative act by the defendant, and not mere silence.

Lastly, the majority notes that courts in the federal system and a majority of the states have held that the right to venue may be waived or forfeited by a defendant's silence and cites the appealing policy reasons for such conclusion. The Federal Constitution, however, in defining proper venue for prosecutions, does not contain any language explaining how, when, or under what circumstances the right to venue in a particular place may be waived. The federal courts, therefore, have interpreted this right as one that, unlike other enumerated rights, may be waived by silence. *See, e.g., United States v. Winship*, 724 F.2d 1116, 1124 (5th Cir. 1984). No such omission is at work here. The New Hampshire Constitution specifically provides the procedure for waiving the right to venue in the place where the crime is alleged to have been committed. Thus, the analysis of the federal courts is inapposite. *See State v. Ball*, 124 N.H. 226, 231-32 (1983) ("While the role of the Federal Constitution is to provide the *minimum* level of national protection of fundamental rights, our court has stated that it has the power to interpret the New Hampshire Constitution as more protective of individual rights than the parallel provisions of the United States Constitution."). Additionally, the majority does not explain how the rules, statutes, cases, or constitutions of any other jurisdiction bear sufficient similarity to Part I, Article 17 such that the analyses and conclusions of those jurisdictions ought to be applied here. Thus, I believe reliance upon the laws and cases of other jurisdictions for the purpose of interpreting the New Hampshire Constitution in this context is inappropriate. We must interpret our Constitution as it is, not as we believe it ought to be, no matter how appealing the reason, or numerous those in disagreement.

Because the New Hampshire Constitution requires a change in venue to be based upon a motion by the defendant and because the defendant made no such motion here, I would conclude that the decision of the superior court to dismiss the matter for improper venue was correct.

After concluding that the respondent had waived his right to contest venue, the majority also concludes that reprosecution of the respondent is not barred by principles of double jeopardy. With this conclusion I also disagree.

According to the majority, the trial court did not decide any of the material elements of the crime, but dismissed the charge for lack of venue. The majority reasons that although venue is an element of the crime, it is not a material element, and does not bear upon a defendant's guilt or innocence. Since venue does not bear upon a defendant's guilt or innocence and is not a material element, the majority concludes that dismissing the case for lack of proper venue is distinguishable from a verdict of acquittal, which would implicate principles of double jeopardy.

RSA 625:10 (2007) states, in relevant part: "No person may be convicted of an offense unless *each element* of such offense is proved beyond a reasonable doubt." (Emphasis added.) RSA 625:11 (2007) provides, in pertinent part:

> III. "Element of an offense" means such conduct, or such attendant circumstances, or such a result of conduct as:
>
> . . .
>
> (e) Establishes jurisdiction or venue.

RSA 625:11, IV defines a material element of an offense as "an element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unrelated to (1) the harm sought to be prevented by the definition of the offense, or (2) any justification or excuse for the prescribed conduct."

While I agree with the majority that venue is not a "material element" of an offense, the distinction between "element" and "material element" is irrelevant here. In order that the defendant be convicted, the State must prove each element of an offense and, as the majority and I agree, venue is an element of every offense under the statute. Here, at the conclusion of the trial, the superior court dismissed the case because it determined that the State had not shown that venue was proper in Hillsborough County, and, therefore, had not proven an element of the offense. Thus, irrespective of whether proper venue bears upon the respondent's guilt or innocence, this case was dismissed because the State did not prove an element of the offense. There is no meaningful distinction between this dismissal and any other judgment of acquittal entered when the State fails to prove an element of the offense. This is simply not a case where the distinction between "element" and "material element" has any bearing on the outcome. *Cf. State v. McCabe*, 145 N.H. 686, 691 (2001) (*mens rea* need not be proved as to particular element because not a material element). Accordingly, I would conclude that retrial of the defendant is barred by double jeopardy.

For these reasons, I respectfully dissent.